UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
LPD NEW YORK, LLC,

                         Plaintiff,                  MEMORANDUM AND
                                                     ORDER

                    -against-                  15-CV-6360 (MKB)

ADIDAS AMERICA, INC., et al.,

                        Defendants.
---------------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

Plaintiff LPD New York, LLC ("LPD" or "plaintiff") brings this action against defendants adidas America, Inc. ("adidas America") and adidas AG (collectively, "adidas" or "defendants"), alleging claims for quasi-contract, promissory estoppel, implied license and defamation. See Second Amended Complaint (May 4, 2018) ("SAC"), Electronic Case Filing ("ECF") Docket Entry ("DE") #77. On June 21, 2018, defendants filed a motion to dismiss the Second Amended Complaint in its entirety. See Letter to the Court dated June 21, 2018 from Robert N. Potter (June 21, 2018) ("Def. Mot."), DE #81. By report and recommendation dated December 12, 2018, this Court recommended that the District Court deny defendants' motion to dismiss in large part. See Report and Recommendation (Dec. 12, 2018) (12/12/18 R&R"), DE #105. Currently before the Court is plaintiff's motion for partial reconsideration. See Motion for Reconsideration (Dec. 26, 2018) ("Pl. Mot."), DE #106. For the reasons discussed below, having considered plaintiff's motion for partial reconsideration, the Court declines to modify its 12/12/18 R&R.

## BACKGROUND

Given the prior motion practice in this case, familiarity with which is assumed, the

Court will discuss only the allegations contained in the SAC that pertain to the instant motion for partial reconsideration.

In its Third Cause of Action in the SAC, plaintiff seeks a declaration that it did not infringe upon adidas's trademarks. See SAC ¶ 125. Plaintiff alleges that "adidas's authorization of LPD's use of certain adidas trademarks and its grant to LPD of the right to sell collaboration merchandise bearing such trademarks gave rise to an implied license . . . ." Id. ¶ 127. Specifically, plaintiff alleges that on June 18, 2014, it sent adidas its design proposal for the collaboration, "which incorporated various adidas trademarks[.]" Id. ¶ 53. adidas thereupon "approved the designs" and "gave its 'permission to move forward' with the collaboration[,]" including asking LPD to "'move forward with all [LPD] sales propositions[.]'" Id. ¶ 54. LPD assured that it would move forward, see id. ¶ 55, and thereafter notified adidas that it had commenced sales, see id. ¶ 69. On July 14, 2014, LPD advised adidas that it had received a great response from buyers and that it had produced the adidas/LPD logo/jocktag, in the companies' respective trademarked scripts. See id. ¶¶ 59, 61. On that same day, adidas responded that it "'had enough signoff . . . to continue to push through and continue on with the collab." Id. ¶ 60. Even after an issue arose concerning a controversial marketing video, adidas advised LPD that "the products are good to go." See id. ¶ 88.

In the 12/12/18 R&R, this Court concluded that the facts alleged, taken as true, were sufficient to raise an inference that adidas intended to permit LPD, pending the finalization of the details of the joint venture, to use its trademarks for promotion and sales of the

collaboration merchandise. See 12/12/18 R&R at 32. In recommending denial of defendants' motion to dismiss this claim, the Court recognized that the SAC alleged that adidas was aware of and approved LPD's use of adidas's trademarks in furtherance of the common goal of maximizing the sale of items from the collaboration, and thereby implicitly authorized such use. Id. Nevertheless, the Court observed that, "once LPD received and rejected the backdated licensing agreement proposed in May 2015, the parties' meeting of the minds as to any [collaboration] came to an end, terminating LPD's implied license to use adidas's marks." Id. at 32 n.10.

Similarly, in recommending denial of defendants' motion to dismiss plaintiff's promissory estoppel claim, this Court concluded that "a reasonable trier of fact could conclude that adidas made a clear and unambiguous promise to LPD that it could begin to sell collaboration merchandise bearing adidas's trademarks." Id. at 26. As with the implied license claim, the Court added that, "once LPD received and refused to sign the proposed back-dated licensing agreement, it could no longer continue to rely on that promise." Id. at 27.

Plaintiff requests that the Court reconsider those aspects of the 12/12/18 R&R regarding the effect of the proposed backdated licensing agreement. First, plaintiff argues that this Court made factual findings that should have been left for the factfinder to resolve after full discovery. See Pl. Mot. at 1-2. Second, plaintiff contends that the backdated license agreement could not have terminated the purported implied license to use adidas's trademarks because the implied license was irrevocable. See id. at 2-3. Relatedly, LPD argues that it

3

continued to justifiably rely on adidas's promise that LPD could use adidas's trademarks even after it was presented with the backdated license agreement, because adidas did not have the authority to revoke the implied license. See id. at 3.

**DISCUSSION**

The standard for granting a motion for reconsideration is strict, and "[r]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd., 628 F.App'x 793, 796 (2d Cir. 2015) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)); see also Oparah v. New York City Dep't of Educ., 670 F.App'x 25, 26 (2d Cir. 2016) ("The standard for granting a motion to reconsider 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."); S.D.N.Y./E.D.N.Y. Local Civ. R. 6.3 (The moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked.").

It is thus well settled that a motion for reconsideration is "'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite of the apple.'" Salveson v. JP Morgan Chase & Co., 663 F.App'x 71, 75-76 (2d Cir. 2016) (quoting Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012)). A motion for reconsideration is "'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that

could have previously been made.'"   Salveson v. JP Morgan Chase & Co., 166 F.Supp.3d 242, 248 (E.D.N.Y. 2016) (quoting Simon v. Smith & Nephew, Inc., 18 F.Supp.3d 423, 425 (S.D.N.Y. 2014)), aff'd, 663 F.App'x 71 (2d Cir. 2016).   Simply put, in order to prevail on a motion for reconsideration, "the moving party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion."   Lichtenberg v. Besicorp Grp. Inc., 28 F.App'x 73, 75 (2d Cir. 2002) (citations and internal quotation marks omitted); see also Stoner v. Young Concert Artists, Inc., No. 11 Civ. 7279(LAP), 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because [a party] is dissatisfied with the outcome of his case.   To do otherwise would be a waste of judicial resources.") (alteration in original).

On its motion for reconsideration, plaintiff improperly raises for the first time the argument that its purported implied license to use adidas's trademarks was irrevocable because it was supported by consideration.   See Pl. Mot. at 2-3.   Plaintiff did not allege in the SAC that the implied license was irrevocable, nor did it make that argument in opposing defendants' motion to dismiss.   On the contrary, at the pre-motion conference, counsel for plaintiff intimated that the implied license was, in fact, revocable, but argued that adidas had not taken the requisite action to revoke it.   See Transcript of June 7, 2018 Pre-Motion Conference (Aug. 8, 2018) ("6/7/18 Tr.") at 21, 35 ("[a]didas has taken no acts to basically tell us to stop us doing what we've been doing"), 37 ("[a]didas . . . has never written a cease and desist, has never told us to do one thing or another with respect to what we have in our

possession"), 39-40 ("there's been no cease and desist letter written"), DE #87. This Court could not have overlooked matters that plaintiff failed to raise until now. Since plaintiff could have raised this argument earlier but omitted to do so, "it is now precluded from raising that argument for the first time on a motion for reconsideration." King Pharms., Inc. v. Eon Labs., Inc., 04-CV-5540 (DGT), 2009 WL 10704788, at *1 (E.D.N.Y. Jan. 7, 2009); see Belfiore v. Proctor & Gamble, Co., 140 F.Supp.3d 241, 245 (E.D.N.Y. 2015) ("a party may not introduce new facts or raise new arguments that could have been previously presented to the court"); Schoolcraft v. City of New York, 133 F.Supp.3d 563, 572 (S.D.N.Y. 2015) (denying motion for reconsideration because plaintiff's arguments were not made earlier). Therefore, the Court denies LPD's motion for reconsideration of an argument raised for the first time in its pending motion.[1]

Even if the Court were inclined to reconsider the 12/12/18 R&R, it would deny LPD's motion on the merits. Plaintiff argues that this Court improperly encroached on the role of the factfinder in limiting the duration of the implied license alleged by plaintiff. Plaintiff is wrong. As Judge Brodie observed in denying a previous motion filed by LPD for reconsideration, a court faced with a Rule 12(b)(6) motion to dismiss is permitted to resolve

---

[1] In its reply to defendants' letter opposing reconsideration, plaintiff concedes that it failed to raise the issue of irrevocability prior to the issuance of the 12/12/18 R&R; plaintiff characterizes that omission as inconsequential," claiming that defendants "only argued that no implied license was ever granted[.]" Reply in Support of LPD's Motion for Reconsideration (Jan. 14, 2019) ("Pl. Reply") at 3, DE #110. Plaintiff ignores the fact that at the pre-motion conference, when repeatedly pressed by the Court regarding the impact of the backdated license agreement on LPD's purported implied license, LPD's counsel disputed that the license had been revoked but never argued that it was irrevocable. See 6/7/18 Tr. at 21, 24, 35, 38-39. At the conclusion of the hearing, the Court directed the parties to supplement their submissions on the motion. See Minute Entry (June 7, 2018), DE #80. Although LPD thus had ample opportunity and incentive to argue irrevocability in its supplemental filing, it failed to do so. See Response in Opposition (June 29, 2018) at 3-4, DE #83.

issues of law based on the facts alleged in the challenged pleading. See Memorandum and Order (Dec. 11, 2017) at 14, DE #66; Vacold LLC v. Cerami, 545 F.3d 114, 123 (2d Cir. 2008) (where the parties "do[] not present disputes about whether particular communications were sent, whether particular words were uttered, or whether the parties entered into prior oral agreements," then "nothing remains for a jury to resolve[;] [t]he dispute, instead, is about the legal significance of those facts"); see also Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc., 14-CV-7483 (MKB), 2017 WL 3432073, at *7 (E.D.N.Y. Aug. 8, 2017) (Brodie, J.) (where "'the evidentiary foundation for determining the formation of the parties' contract is either undisputed or consists of writings,' . . . [whether there was a meeting of the minds] is a question of law for the court") (quoting Vacold, 545 F.3d at 123).[2]

Here, having considered the allegations in the SAC in the light most favorable to plaintiff, this Court concluded that plaintiff had failed to assert facts sufficient to establish the continued viability of any implied license beyond the proposed backdated license agreement. In so doing, the Court quite properly drew a legal conclusion from the facts *as alleged by plaintiff*.

Finally, LPD argues that its alleged implied license was irrevocable. To be sure, "a nonexclusive license 'may be irrevocable if supported by consideration because then the implied license is an implied contract.'" Latour v. Columbia Univ., 12 F.Supp.3d 658, 662 & n.37 (S.D.N.Y. 2014) (quoting Unclaimed Prop. Recovery Serv. v. Kaplan, No. 11-cv-

---

[2] Likewise, whether a party reasonably relied on a promise may be decided as a matter of law. See McMahon v. Digital Equip. Corp., 162 F.3d 28, 39 (1st Cir. 1998).

1799, 2012 WL 4195241, at *4 (E.D.N.Y. Sept. 19, 2012), aff'd on other grounds, 734 F.3d 142 (2d Cir. 2013)). Here, however, plaintiff's argument that the implied license was supported by consideration, thereby creating an implied-in-fact contract, flies in the face of repeated rejections -- by this Court as well as the District Court -- of plaintiff's contention that an implied-in-fact contract existed between the parties. See Report and Recommendation (Aug. 25, 2016) at 25 n.15, DE #39; Memorandum & Order (Mar. 27, 2017) at 20 n.7, DE #55; Electronic Order (Apr. 27, 2018). Moreover, the SAC fails to allege what plaintiff now claims for the first time -- that plaintiff's design proposals, marketing efforts and contribution of its own trademarks to the collaboration constituted consideration given in exchange for the use of adidas's trademarks. This omission is fatal to plaintiff's motion for reconsideration. See Childers v. N.Y. & Presbyterian Hosp., 36 F.Supp.3d 292, 313 (S.D.N.Y. 2014) (dismissing claim for breach of implied contract where pleading failed to allege, *inter alia*, facts to show that defendant "received consideration for entering into the alleged agreement").[3]

Finally, plaintiff's argument regarding irrevocability is internally inconsistent. On the one hand, plaintiff contends that the implied license is irrevocable. See Pl. Mot. at 2-3. On the other hand, plaintiff argues that to revoke the license, adidas "was obliged to sue LPD for trademark infringement or, at minimum, expressly and unequivocally state that it was – in fact

---

[3] Citing to various factual allegations – some of them set forth in the fact section of the SAC, see Pl. Mot. at 2 n.1 – LPD now contends that it "provided ample consideration to adidas in exchange for the Implied License[,]" see id. at 2. Nevertheless, conspicuously absent from the SAC's claim for implied license is any reference to adidas's receipt of consideration from LPD; instead, the only facts asserted in the SAC's Third Cause of Action concern adidas's promises to allow LPD to use adidas trademarks, see SAC ¶¶ 120-123, and LPD's reliance thereon, see id. ¶¶ 124-125, which, according to the SAC, "establish[] that the parties reached a meeting of the minds" regarding LPD's use of the trademarks, see id. ¶ 126.

8

– terminating LPD's right to use adidas's marks and sell collaboration merchandise." Id. at 3. In connection with the latter argument, LPD mistakenly relies on a series of cases that stand for the unremarkable proposition that the filing of a lawsuit by the grantor of an implied license against the grantee is *sufficient* to revoke the implied license. See id.; Pl. Reply at 2-3. In none of the referenced cases did the courts hold that the initiation of litigation is *necessary* to effect a revocation. See, e.g., Keane Dealer Servs., Inc. v. Harts, 968 F.Supp. 944, 947 (S.D.N.Y. 1997). No such requirement may be gleaned from the caselaw. See generally Menendez v. Holt, 128 U.S. 514, 524 (1888) (a revocable license "lasts no longer than the silence from which it springs") (internal quotation marks and citations omitted); Grand Heritage Mgmt., LLC v. Murphy, No. 06 Civ. 5977(NRB), 2007 WL 3355380, at *8 (S.D.N.Y. Nov. 7, 2007).

In sum, even if the arguments belatedly raised in LPD's motion for reconsideration were not procedurally barred, they would fail on the merits.

## CONCLUSION

For the foregoing reasons, LPD's motion for reconsideration is denied.

**SO ORDERED.**

Dated:  Brooklyn, New York
        January 25, 2019

/s/     *Roanne L. Mann*
        **ROANNE L. MANN**
        **CHIEF UNITED STATES MAGISTRATE JUDGE**