UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

LPD NEW YORK, LLC.,

                    Plaintiff,

v.

ADIDAS AMERICA, INC. and ADIDAS AG,

                    Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
15-CV-6360 (MKB) (RLM)

MARGO K. BRODIE, United States District Judge:

Plaintiff LPD New York, LLC commenced the above-captioned action on November 5, 2015, against Defendants Adidas America, Inc. ("Adidas America") and Adidas AG. (Compl., Docket Entry No. 1). On May 4, 2018, Plaintiff filed a Second Amended Complaint ("SAC"), asserting claims for breach of quasi-contract, promissory estoppel, implied license, unjust enrichment, and defamation.[1] (SAC, Docket Entry No. 77). On June 21, 2018, Defendants moved to dismiss the SAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Defs. Sec. Mot. to Dismiss ("Defs. Sec. Mot."), Docket Entry No. 81.)

By report and recommendation dated December 12, 2018, Chief Magistrate Judge Roanne L. Mann recommended that the Court deny Defendants' motion to dismiss but that certain portions of the SAC be stricken (the "Sec. R&R"). (*See* Sec. R&R 34.) Plaintiff moved for reconsideration of the Sec. R&R, (Pl. Sec. Mot. for Reconsideration, Docket Entry No. 105), and Judge Mann denied the motion for reconsideration on January 25, 2019, (Order Denying

---

[1] In the SAC, Plaintiff refers to Adidas America, Inc. and Adidas AG collectively as Adidas. (SAC ¶ 7.) The Court refers to both as "Defendants."

Reconsideration, Docket Entry No. 112.) On February 8, 2019, Plaintiff filed objections to the Sec. R&R. (Pl. Obj., Docket Entry No. 122.)

For the reasons set forth below, the Court adopts the R&R in its entirety.

I. **Background**

　　a. **Factual background**

The Court assumes the truth of the factual allegations in the SAC for the purposes of this Memorandum and Order.

Plaintiff is a fashion company that creates "streetwear" products. (SAC ¶¶ 15–16.) In October of 2013, Defendants contacted Plaintiff to discuss a possible "collaboration" in which Plaintiff would create unique streetwear-style designs for Defendants' brand and five National Collegiate Athletic Association ("NCAA") basketball teams sponsored by Defendants. (*Id*. ¶¶ 18–19.) Plaintiff expressed interest in the collaboration and developed two design "capsules" for the collaboration: a "Classics Capsule" and a "Collaboration Capsule." (*Id*. ¶¶ 20–21.) After receiving preliminary prints for the Classics Capsule, Defendants responded that they were "excited" about the designs. (*Id*. ¶¶ 22–23.)

On November 21, 2013, Defendants suggested possible options for branding and retailing Plaintiff's products, and Plaintiff replied that it would start work on tags and labels for the Collaborations Capsule items and could start work on "visuals" as soon as it had "samples of the first approved products." (*Id*. ¶¶ 25–26.) In addition, Plaintiff asked if "it would be possible to get a letter of intent for the collaboration." (*Id*. ¶ 26.) Defendants thought "a letter of intent [would be] perfect" and agreed to "work on putting some of this into a document with the purpose of this along with details." (*Id*. ¶ 27 (alterations omitted).)

On February 25, 2014, Plaintiff sent Defendants "a concept proposal for the

2

Collaboration Capsule." (*Id.* ¶ 33.) By March of 2014, Defendants had not responded, and Plaintiff followed up to get Defendants' feedback regarding the Collaboration Capsule and a letter of intent. (*Id.* ¶ 34.) A week later, Defendants replied, stating that they approved of the designs for the Collaboration Capsule and that "[t]he letter of intent is a work in progress" due to some "development[al] boundaries." (*Id.* ¶ 35.) Defendants also provided "some key next steps," which included finalization of the "[l]etter of intent." (*Id.*) Plaintiff asked how the parties would divide or allocate the "sales and profits," to which Defendants responded that the products from the Classics Capsule would be provided to the NCAA teams at no cost. (*Id.* ¶¶ 36–37.) Defendants further stated that their licensed apparel division would purchase the Collaboration Capsule materials related to the NCAA teams, the "royalties [from those sales] would go to the schools," and the "capsule collection profits would likely be primarily profits to [Plaintiff]" because Defendants' products were mainly "on court school products." (*Id.* ¶ 37.) Defendants also stated that the details of the collaboration would be finalized and confirmed "once the mission statement is complete." (*Id.*) In response, Plaintiff asked that Defendants "just let [Plaintiff] know the specifics and that everything is confirmed once [Defendants] know[ ] for sure." (*Id.* ¶ 38.)

After making arrangements to prepare samples of products for both capsules, Plaintiff contacted Defendants to determine who would cover the costs of producing the samples and to specify the location of manufacturing for the final products. (*Id.* ¶¶ 39, 41.) Defendants gave Plaintiff a "budget code" to pay for the production of the samples and stated that the final products would be manufactured in Defendants' facilities. (*Id.* ¶¶ 40, 42.) Because Plaintiff's "pattern-and-sample maker" refused to accept Defendants' budget code to cover the sample production costs, Plaintiff paid the costs and sought reimbursement from Defendants. (*Id.* ¶ 47.)

3

On June 12, 2014, Defendants notified Plaintiff that there was a "large re-alignment within [its] group," [placing] many of [Defendants'] projects . . . on hold." (*Id.* ¶ 50.) Nevertheless, Defendants told Plaintiff that it wanted to finalize and launch the collaboration and instructed Plaintiff to do the following: (1) send the "art" from the capsules for Defendants to review, (2) send information regarding the Classics Capsule for Defendants' "teams" to "agree and sign off," and (3) keep any information regarding the teams involved in the collaboration confidential. (*Id.*) Defendants also agreed to reimburse the sample production costs and told Plaintiff that further details regarding the collaboration should be handled in "the next few weeks." (*Id.*) As to the prices for the collaboration products, Plaintiff informed Defendants that it could not "pin down exact[ ] [pricing] since it depends on production (specifically whether Plaintiff is producing the pieces here or at [Defendants'] facilities abroad and how many units . . . are ordered.)". (*Id.* ¶ 51 (alterations omitted).) Plaintiff also requested "some sort of confirmation that the collaboration . . . will be happening." (*Id.*) Defendants responded that "the collaboration would only be confirmed once [Defendants] were '100% on board'" and could "dedicate more funding for the collaboration." (*Id.* ¶ 52.)

The following week, Plaintiff followed up, again asking about the location of the manufacturing and also sending Defendants its final design proposal for the collaboration. (*Id.* ¶ 53.) Defendants responded that "upper management approved the designs" and gave Plaintiff "'permission to move forward' with the collaboration." (*Id.* ¶ 54.) Defendants subsequently sent Plaintiff sample products that it produced based on the Classics Capsule and allowed Plaintiff to pitch products from both capsules to potential buyers. (*Id.* ¶¶ 56–57.) Thereafter, Plaintiff notified Defendants that its buyers were interested in the products and inquired as to the status of the reimbursement for the sample production costs it had incurred.

(*Id.* ¶¶ 58–59.) Defendants expressed their intent to reimburse the sample production costs, noted that they were having a meeting soon to discuss "a marketing budget and promotional plan," and stated that they had "enough signoff to continue to push through and continue on with the collab[oration]." (*Id.* ¶ 60 (alterations omitted).)

On September 8, 2014, Plaintiff began selling women's clothing items from the collaboration. (*Id.* ¶ 69.) Plaintiff also secured promotional publications with several online and print media outlets and continued to promote the collaboration in various places. (*Id.* ¶¶ 69, 72–73, 76.) As part of its promotion efforts, Plaintiff created a "provocative" marketing video for the Collaboration Capsule. (*Id.* ¶ 76.) In November of 2014, V Magazine reached out to Plaintiff, seeking to secure an exclusive feature of the Collaboration Capsule. (*Id.* ¶ 77.) Plaintiff agreed. (*Id.* ¶ 78.) After V Magazine published the feature, a representative from Defendants called one of V Magazine's senior editors and told her that the collaboration was "illegitimate." (*Id.* ¶¶ 79–80.) As a result, V Magazine withdrew the feature. (*Id.* ¶ 82.)

After getting in touch with the representative who had contacted V Magazine, Plaintiff provided him with information about Defendants' representative through whom the collaboration had been taking place. (*Id.* ¶¶ 83–84.) Plaintiff also reached out to Defendants, seeking clarification of the basis for the statement made by Defendants' representative to V Magazine. (*Id.* ¶ 85.) Defendants responded that the promotional material regarding the collaboration "took another route" than what the parties had discussed and "raised some flags" with its public relations team. (*Id.* ¶ 86.) Defendants also told Plaintiff that the executive who approved the collaboration was no longer with the company and while they "did provide initial green lights to proceed, . . . all content needed to be approved by [Defendants'] higher ups." (*Id.*) Plaintiff expressed its confusion and sent Defendants copies of all the materials it had regarding the

collaboration. (*Id.* ¶ 87.) Defendants then told Plaintiff that the "products are good to go" but the promotional video could not be shown anymore and any sales from the Classics Capsule had to be placed on hold because it could cause legal issues with the NCAA teams. (*Id.* ¶ 88.)

Plaintiff continued to promote and sell items from the Collaboration Capsule but, in January of 2015, a buyer refused to accept delivery and pay for the items because he doubted the legitimacy of the collaboration. (*Id.* ¶¶ 90, 94–95.) To resolve the issue, Plaintiff requested that Defendants send the buyer a letter confirming the collaboration's legitimacy. (*Id.* ¶ 96.) Defendants sent the letter, but the buyer requested additional assurance, and Plaintiff requested further confirmation of the collaboration. (*Id.* ¶¶ 97–99.)

In May of 2015, Defendants sent Plaintiff a "back-dated licensing agreement" dated June 1, 2014, which provided that Plaintiff had the right to "use the [A]didas name and the Three–Stripes trademark" for both capsules "provided LPD paid 10% royalties" to Defendants. (*Id.* ¶ 100.) The proposed licensing agreement also "sought to terminate [Plaintiff's] right to manufacture and sell pieces from the Classics and Collaboration Capsules" as of May 1, 2015. (*Id.*) Plaintiff refused to sign the agreement and again requested reimbursement for the sample production costs. (*Id.* ¶¶ 101–02.) Defendants threatened to sue Plaintiff for trademark infringement. (*Id.* ¶ 102.)

Plaintiff alleges that it performed its obligations pursuant to the parties' discussions and that Defendants were aware of and accepted Plaintiff's performance. (*Id*. ¶¶ 106–07.) Plaintiff expected that Defendants would fairly compensate it for its performance, yet Defendants failed to do so. (*Id*.) Plaintiff alleges that Defendants were "unjustly enriched" by accepting Plaintiff's performance without "just compensation." (*Id*. ¶ 111.)

### b. Procedural background

Plaintiff commenced this action on November 5, 2015 against Defendants, asserting claims for breach of contract, defamation, and unjust enrichment. (Compl.) Defendants moved to dismiss the Complaint for failure to state a claim, (Defs. First Mot. to Dismiss ("Defs. First Mot."), Docket Entry No. 20), and Plaintiff cross-moved for partial summary judgment on its breach of contract, defamation, and declaratory judgment claims, (Pl. Mot. for Partial Summ. J., Docket Entry No. 24.) The Court referred both motions to Judge Mann for a report and recommendation. By report and recommendation dated August 25, 2016, Judge Mann recommended that the Court grant Defendants' motion to dismiss Plaintiff's breach of contract and declaratory judgment claims, deny the motion as to Plaintiff's defamation and unjust enrichment claims, and deny Plaintiff's motion for partial summary judgment (the "First R&R"). (First R&R, Docket Entry No. 39.) By Memorandum and Order dated March 21, 2017 (the "March 2017 Decision"), the Court adopted the report and recommendation of Judge Mann in its entirety. *See LPD New York, LLC v. Adidas America, Inc.*, No. 15-CV-6360, 2017 WL 1162181, at *1 (E.D.N.Y. Mar. 27, 2017). Plaintiff subsequently moved for reconsideration of the Court's March 2017 Decision, and the Court denied reconsideration on December 11, 2017. *LPD New York, LLC v. Adidas America, Inc.*, 295 F. Supp. 3d 275, 279 (E.D.N.Y. 2017).

By Order dated January 22, 2018, the Court allowed Plaintiff to file an Amended Complaint to assert quasi-contract claims. (Order dated Jan. 22, 2018.) Plaintiff filed an Amended Complaint on April 4, 2018, (Am. Compl., Docket Entry No. 74), and on May 4, 2018, filed the SAC, which is the operative complaint.

The SAC asserts claims for breach of quasi-contract, promissory estoppel, implied license, unjust enrichment, and defamation. (SAC.) On June 21, 2018, Defendants moved to

dismiss the SAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def. Sec. Mot.)

By Order dated August 3, 2018, Judge Mann treated Defendants' letter-request for a pre-motion conference as Defendants' motion, and Plaintiff's response to the letter as Plaintiff's opposition to the motion. (Order dated Aug. 3, 2018.) By report and recommendation dated December 12, 2018, Judge Mann recommended that the Court deny Defendants' motion to dismiss but that certain portions of the SAC be stricken. (*See* Sec. R&R 34.)

Plaintiff subsequently filed a motion for reconsideration, arguing that Judge Mann erred in finding that once Plaintiff received and rejected the backdated licensing agreement proposed in May of 2015, the parties' meeting of the minds as to any Capsule came to an end, terminating Plaintiff's implied license to use Defendants' marks and its reliance on Defendants' promise that Plaintiff could sell collaboration merchandise bearing Defendants trademarks. (Pl. Obj. 8 (citing R&R 26–27).) Plaintiff also argued that because Defendants' implied license was supported by consideration, the license was irrevocable, and Defendants' proposed back-dated licensing agreement was a mere proposal that Plaintiff was free to reject and which could not have ended the implied license or Plaintiff's reliance on Defendants' promise that Plaintiff could sell collaboration merchandise. (Pl. Obj. 9.)

On January 25, 2019, Judge Mann denied Plaintiff's motion for reconsideration and found that Plaintiff impermissibly raised new arguments, that Plaintiff previously conceded that the implied license was revocable, that the SAC lacks allegations that Plaintiff's implied license was supported by consideration, and, that if the implied license was supported by consideration, it would then be an enforceable contract which would "fly in the face of" the Court's prior holding that no contract existed. (Order Denying Reconsideration.) Plaintiff filed an objection

8

to the R&R on February 8, 2019.  (Pl. Obj.)

### c. Judge Mann's recommendations

Judge Mann recommended that the Court deny Defendants' motion to dismiss in large part, but that portions of the SAC be stricken.  Specifically, Judge Mann recommended that the Court (1) deny Defendants' motion to dismiss Plaintiff's quasi-contract claim except that Plaintiff's demand for Defendants' profits in paragraph 113 of the SAC be stricken; (2) deny Defendants' motion to dismiss Plaintiff's promissory estoppel claim as to three of the purported promises but grant the motion as to Plaintiff's claim that Defendants promised that Plaintiff could unilaterally collect and retain all the proceeds from the sale of merchandise from the Collaboration Capsule and strike the allegation in paragraph 115 accordingly; (3) deny Defendant's motion to dismiss Plaintiff's implied license claim for the use of Defendants' trademark; and (4) deny Defendants' motion to dismiss Plaintiff's defamation claim except that Plaintiff's allegation in paragraph 128 that Defendants published "perhaps, other false statements" be stricken.  (R&R 34.)

### d. Plaintiff's objections to the R&R

Plaintiff objects to Judge Mann's comments in footnote ten of the R&R that "once [Plaintiff] received and rejected the backdated licensing agreement proposed in May 2015, the parties' meeting of the minds as to any Capsule came to an end, terminating [Plaintiff's] implied license to use adidas's marks."  (Pl. Obj. 15)

Plaintiff does not object to Judge Mann's recommendation that Plaintiff has stated a promissory estoppel claim based on Defendants' representation that "upper management approved the designs," and gave Plaintiff "permission to move forward" with the collaboration.  Plaintiff objects to Judge Mann's finding that "once [Plaintiff] received and refused to sign the

9

proposed back-dated licensing agreement, it could no longer continue to rely on that promise." (Pl. Obj. 8.) Plaintiff argues that Judge Mann "impermissibly invaded the provenance of the jury" in finding that the back-dated licensing agreement terminated Plaintiff's implied license and Plaintiff's right to rely on Defendants' promise that it could sell collaboration merchandise. (Pl. Obj. 14.) Further, Plaintiff argues that the back-dated licensing agreement was a mere proposal that could not have ended Plaintiff's license to sell collaboration merchandise. (*Id.* at 15–16.)

Plaintiff also objects "to any . . . holdings, express or implied, that no contract existed between the parties because they expressly reserved their right not to be bound absent the execution of a formal contract." (*Id.* at 12 n.3.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016)

(holding "general objection[s] [to be] insufficient to obtain *de novo* review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

    ii. **Rule 12(b)(6)**

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

 b. **Unopposed recommendations**

No party objects to Judge Mann's recommendations that the Court deny Defendants' motion to dismiss Plaintiff's quasi-contract, promissory estoppel, implied license, and

11

defamation claims. The Court has reviewed the unopposed portions of the R&R and, finding no clear error, adopts the recommendations pursuant to 28 U.S.C. § 636(b)(1).

### c. There was no implied license after May 1, 2015

Plaintiff argues that it is a fact question for the jury to determine whether the back-dated licensing agreement terminated the implied license and Plaintiff's right to rely on Defendants' promise that Plaintiff could sell collaboration merchandise. (Pl. Obj. 14.)

Defendants argue that whether an implied license exists is a legal question that the Court can resolve based on Plaintiff's allegations at the pleading stage. (Defs. Resp. 6.)

To defeat a motion to dismiss, a plaintiff's complaint must set forth plausible allegations that state a claim for relief, which entails setting forth allegations to support each element of the alleged legal violation. *See Iqbal*, 556 U.S. at 678–80. In deciding a motion to dismiss for failure to state a claim, the Court must accept all factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Id*. However, a court is permitted to resolve issues of law based on facts alleged in the complaint. *See Vacold LLC v. Cerami*, 545 F.3d 114, 123 (2d Cir. 2008) (finding that where the parties "do[ ] not present disputes about whether particular communications were sent, whether particular words were uttered, or whether the parties entered into prior oral agreements," then "nothing remains for a jury to resolve[;] [t]he dispute, instead, is about the legal significance of those facts"); *see also Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc.*, 14-CV-7483, 2017 WL 3432073, at *7 (E.D.N.Y. Aug. 8, 2017) (finding that where "'the evidentiary foundation for determining the formation of the parties' contract is either undisputed or consists of writings,' . . . [whether there was a meeting of the minds] is a question of law for the court" (quoting *Vacold*, 545 F.3d at 123)).

The Second Circuit has not established a test for determining whether a copyright owner

has conveyed an implied license. *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 434 (E.D.N.Y. 2018). However, the Second Circuit "has followed the lead of other appeals courts and cautioned that implied non-exclusive licenses should be found only in narrow circumstances where one party created a work at the other's request and handed it over, intending that the other copy and distribute it." *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 120 (S.D.N.Y. 2012) (quoting *Weinstein Co. v. Smokewood Entm't Grp., LLC*, 664 F. Supp. 2d 332, 344 (S.D.N.Y. 2009)). "[T]he question comes down to whether there was a 'meeting of the minds' between the parties to permit the particular usage at issue." *Id*. at 124 (citing *Ulloa v. Universal Music and Video Distrib. Corp.*, 303 F. Supp. 2d 409, 416 (S.D.N.Y. 2004)).

With regard to an implied license, the alleged licensee "bears the burden of demonstrating that there was 'a meeting of the minds as determined by contract law.'" *Microban Prods. Co. v. API Industries, Inc.*, No. 14-CV-41, 2014 WL 1856471, at *13 (S.D.N.Y. May 8, 2014) (quoting *Pavlica v. Behr*, 397 F. Supp. 2d 519, 526 (S.D.N.Y. 2005)); *see also Ulloa*, 303 F. Supp. at 416 ("In order to establish an implied license … [the claimant] must prove that there was a meeting of the minds.").

Plaintiff's allegations belie a meeting of the minds as to any implied license after May 1, 2015. In the SAC, Plaintiff alleges that "[t]he proposed back-dated licensing agreement also *sought to terminate* [Plaintiff's] right to manufacture and sell pieces from the Classics and Collaboration Capsules" as of May 1, 2015. (SAC ¶ 100.(emphasis added).) Indeed, Plaintiff alleges that Defendants threatened to sue Plaintiff for trademark infringement after Plaintiff rejected the back-dated licensing agreement. (*Id*. ¶ 101.) Accepting these allegations as true, which the Court must at the pleading stage, Plaintiff cannot plausibly allege that the parties had a meeting of the minds as to Plaintiff's implied license to manufacture and sell pieces from the

Classics and Collaboration Capsules as of May 1, 2015. Plaintiff's rejection of the back-dated licensing agreement and Defendants' threat to sue for trademark infringement terminated Plaintiff's implied license to use Defendants' trademark as of May 1, 2015.

### d. The implied license was revocable

Plaintiff argues that the back-dated licensing agreement was a mere proposal that could not have unilaterally terminated Plaintiff's implied license, which was supported by consideration and thus irrevocable. (Pl. Obj. 8–9, 15.)

Defendants argue that Plaintiff improperly raised the argument that the implied license was supported by consideration and thus irrevocable for the first time in its motion for reconsideration of the R&R. (Defs. Resp. 7.) Even if properly raised, Defendants argue that the argument fails because Plaintiff has conceded that the implied license was revocable and that Defendants revoked it. (*Id*. at 8.)

The Court assumes that Plaintiff's argument was properly raised and rejects it on the merits. "[A] nonexclusive license 'may be irrevocable if supported by consideration because then the implied license is an implied contract.'" *Latour v. Columbia Univ.*, 12 F. Supp. 3d 658, 662 & n.37 (S.D.N.Y. 2014) (quoting *Unclaimed Prop. Recovery Serv. v. Kaplan*, No. 11-CV-1799, 2012 WL 4195241, at *4 (E.D.N.Y. Sept. 19, 2012)), *aff'd on other grounds*, 734 F.3d 142 (2d Cir. 2013). For the same reasons articulated in the Court's March 2017 Decision, *see LPD New York*, 2017 WL 1162181, at *9 & n.7, Plaintiff's allegations fail to establish the existence of an implied-in-fact contract. *See Turner v. Temptu Inc.*, 586 F. App'x 718, 721–22 (2d Cir. 2014) (holding that a plaintiff failed to establish the existence of an "implied-in-fact contract" because the parties never "manifested the requisite intent to enter into a binding . . . agreement"); *Missigman v. USI Northeast, Inc.*, 131 F. Supp. 2d 495, 512–13 (S.D.N.Y. 2001) (finding that

the plaintiff failed to establish the existence of an implied-in-fact contract because the defendant's conduct indicated that it did not want to be bound absent a formal, written agreement). Therefore, Plaintiff's license was revocable, and it was revoked at the time Plaintiff rejected Defendants' back-dated licensing agreement.

      e.    **The law of the case doctrine bars Plaintiff's allegations as to the formation of an enforceable contract**

Plaintiff also objects to "any of Magistrate Judge Mann's holdings, express or implied, that no contract existed between the Parties because they expressly reserved their right not to be bound absent the execution of a formal contract." (Pl. Obj. 12 n.3.)

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Arizona Premium Fin. Co. v. Emps'rs Ins. of Wausau, of Wausau Am Mut. Co.*, 586 F. App'x 713, 716 (2d Cir. 2014) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). To prevent the parties from re-litigating previously decided issues, the doctrine "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Jackson v. New York State*, 523 F. App'x 67, 69 (2d Cir. 2013) (quoting *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008)). A court should therefore be "'loathe' to revisit an earlier decision 'in the absence of extraordinary circumstances . . . .'" *N. River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995); *see also Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999) ("[T]he decision whether or not to apply law-of-the-case is . . . informed principally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine." (citations omitted)). Although prudential and discretionary, the doctrine may be raised

by a court *sua sponte*. *See United States v. Lacouture*, 721 F. App'x 1, 4 (1st Cir. 2018) (citing *United States v. Wallace*, 573 F.3d 82, 90 n.6 (1st Cir. 2009)); *United States v. Anderson*, 772 F.3d 662, 669 (11th Cir. 2014); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551, 2012 WL 1890242, at *4 (E.D.N.Y. May 23, 2012).

The Court previously addressed Plaintiff's argument that its allegations in the Complaint are sufficient to show that a contract existed between the parties and declines to do so again. Assuming the truth of Plaintiff's allegations in the Complaint, the Court found that Plaintiff failed to establish that the parties entered into a binding contract because of Defendants' intention to complete a formal written agreement, which the parties never completed. *See LPD New York*, 295 F. Supp. 3d at 285–86; *LPD New York*, 2017 WL 1162181, at *7 n.6. The SAC does not include any additional allegations sufficient to preclude application of the law of the case doctrine. *See Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316–17 (S.D.N.Y. 2015) ("The mere filing of an [a]mended [c]omplaint does not entitle the [p]laintiff to relitigate his claims absent new factual allegations."), *aff'd*, 626 F. App'x 20 (2d Cir. 2015); *see also Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995) (holding that law of the case doctrine could be applied as to sufficiency of amended complaints if they were sufficiently similar to the original complaint). Therefore, the Court's prior holding that no contract existed between the parties because they expressly reserved their right not to be bound absent the execution of a formal contract is the law of the case.

### III. Conclusion

For the foregoing reasons, and consistent with the R&R, the Court denies Defendants' motion to dismiss but strikes the following from the SAC: (1) the demand in paragraph 113 for Defendants' profits; (2) the allegation in paragraph 115 that Plaintiff was entitled to all the

16

proceeds from the sale of merchandise from the Collaboration Capsule; and (3) the allegation in paragraph 128 that Defendants published "perhaps, other false statements."

Dated: March 29, 2019
      Brooklyn, New York

SO ORDERED:

     s/ MKB
MARGO K. BRODIE
United States District Judge