UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LPD NEW YORK, LLC,

                        Plaintiff,                                          **MEMORANDUM
                                                                 AND ORDER**

                    -against-                                              15-CV-6360 (MKB)

**ADIDAS AMERICA, INC., et al.,**

                        Defendants.
-----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      In a letter-motion dated October 21, 2020, see Letter Motion to Compel (Oct. 21, 2020) ("Pl. Motion"), Electronic Case Filing Docket Entry ("DE") #199, #200, plaintiff LPD New York, LLC ("LPD") seeks an order compelling defendant adidas America, Inc. ("adidas") to produce eleven licensing agreements with non-parties in fully unredacted form. adidas opposes the motion, complaining that, although the production at issue was made on August 21, 2020, LPD waited more than six weeks, until October 6, 2020, before raising the issue with adidas, and then filed its motion to compel before the parties had completed conferring about the portions that LPD wished to see in unredacted form. See Response to Motion (Oct. 22, 2020) ("Def. Opp."), DE #201. For the reasons that follow, the Court denies in substantial part LPD's motion to compel, and requires adidas to produce in unredacted form only a handful of the contractual provisions sought by LPD.

      As an initial matter, as adidas correctly observes, this Court would be amply warranted in denying LPD's motion in its entirety based on LPD's failure to identify to adidas, on

October 21, those provisions still in dispute after adidas disclosed, at LPD's request, a variety of previously redacted provisions. See Def. Opp. at 2-3. In any event, having considered the parties' dispute on the merits, the Court declines to order adidas to produce the eleven licensing agreements in completely unredacted form.

In support of its motion to compel, LPD relies on the general principle that courts ordinarily do not permit parties "to selectively excise from otherwise discoverable documents those portions that they deem not to be relevant." Howell v. City of New York, No. CV-06-6347 (ERK)(VVP), 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007); see Pl. Motion at 2 (collecting cases). adidas does not take issue with this general principle, but instead argues that the circumstances of this case "present extraordinary circumstances justifying an exception to that rule." Def. Opp. at 3 (citing Engage Healthcare Commc'ns, LLC v. Intellisphere, Civil Action No. 12–cv–00787(FLW)(LHG), 2017 WL 3624262, at *5 (D.N.J. Apr. 26, 2017), adopted, 2017 WL 3668391 (D.N.J. Aug. 23, 2017)). This Court agrees, but notes that the standard that must be met to overcome the presumption against unilateral redactions is not "extraordinary circumstances" but "good cause." See Howell, 2007 WL 2815738, at *2 (citing Fed. R. Civ. P. 26(c)); accord Johnson v. City of New York, No. 16 Civ. 6426 (KAM) (VMS), 2018 WL 276349, at *3 (E.D.N.Y. Jan. 3, 2018). Given the conduct of LPD's counsel in this case (including counsel's previous disclosure of documents designated by adidas as Attorneys'-Eyes-Only to counsel's non-lawyer client), coupled with the highly commercially sensitive nature of the redacted portions of the documents, see Def. Opp. at 2, 3, the Court concludes that this case warrants a departure from the aforesaid general rule, with adidas being

2

permitted to redact competitively sensitive portions of the licensing agreements that are not relevant to the issues in this case.

In seeking disclosure of wholly unredacted licensing agreements with non-parties, LPD relies solely on the presumption against unilateral redactions, but makes no showing whatsoever as to the relevance of the redacted portions.  Since the subject matter of the selective portions that remain redacted may be gleaned from their headings – such as "Royalties" and "Payments" – and from surrounding portions, LPD was in no way disabled from making such a showing.  LPD's failure to even argue that the redacted portions are relevant to the issues in this case supplies yet another reason for rejecting its demand for disclosure in full.  Despite LPD's deficient showing, this Court has nevertheless conducted an *in camera* examination of the 379 pages of documents containing disputed redactions (DE #202-1 through #202-11); see DE #200-3 (LPD's "Catalog of Redactions").  Based on its painstaking review, the Court concludes that the vast majority of the challenged redactions are entirely irrelevant to the issues in this case.

adidas acknowledges that the licensing agreements "contain information relevant to LPD's naked licensing defense[,]"[1] Def. Opp. at 2, the basis on which adidas was directed to produce the licensing agreements, see Minute Entry (Sept. 13, 2019), DE #174.  Most of the redacted provisions at issue here relate to financial terms such as royalties and minimum sales,

---

[1] To overcome such a defense, a licensor "is required to exercise some degree of control over the use of the mark by the licensee, at the risk of abandonment of the mark."  Hawaii–Pac. Apparel Grp., Inc. v. Cleveland Browns Football Co. LLC, 418 F.Supp.2d 501, 506 (S.D.N.Y. 2006); see also Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc., 277 F.3d 253, 259 (2d Cir. 2002) (licensor "is obliged to maintain some control over the quality of the licensed property as an incident of valid licensing or risk abandonment of its mark").

which have no bearing on LPD's naked licensing theory.  The Court did identify a handful of redactions of information that, while not labeled "quality control," reflects the control that adidas exercised over its licensees' use of the marks.  Using the November 1, 2007 licensing agreement as an example, section 3(b) requires that adidas approve the use of a Major League Soccer player's name and number on the licensed products (DE #202-2 at ECF pp. 5-6); section 7(b) prohibits the licensee from taking any action that would damage "the validity and subsistence" of the trademarks (id. at ECF pp. 6-7); section 19(a) requires the licensee to provide adidas with complimentary licensed products for "internal purposes," which could include quality control (id. at ECF p. 13); and Exhibit J provides that the licensee can sell the products only through certain retailers and lists examples (id. at ECF p. 44).[2]  This redacted information thus would seem to bear upon – albeit undermine -- LPD's naked licensing allegations.  Therefore, adidas is directed to "unredact" those portions of the licensing agreements, subject to the confidentiality designation selected by adidas in good faith.[3]  adidas is precluded from using the remaining redacted portions of the licensing agreements to demonstrate that it exercised adequate control over its licensees' use of the marks.  See Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the

---

[2] Sections 6.20 and 6.21 of the May 1, 2014 agreement contain an analogous provision circumscribing the location and timing of the sale of "better level" products (DE #202-9 at ECF p. 17).

[3] The Court has also identified provisions that may have been redacted from some but not all of the licensing agreements, such as exhibits to the agreement that are labeled "Workplace Standards."  Compare, e.g., DE #202-6 (Exhibit C), DE #202-7 (Exhibit C), with DE #202-9 (Exhibit E), DE #202-10 (Exhibit C), DE #202-11 (Exhibit G).  adidas should not redact arguably relevant language from one agreement that has been disclosed in another.

4

failure was substantially justified or is harmless.").

## CONCLUSION

For the foregoing reasons, LPD's motion to compel is denied in substantial part, except that adidas shall produce in unredacted form those limited additional portions of the licensing agreements that arguably relate to adidas's control over the use of its marks by its licensees.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**November 17, 2020**

/s/      *Roanne L. Mann*
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**