UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

LPD NEW YORK, LLC,

                          Plaintiff,                          **MEMORANDUM & ORDER**
                                                                        15-CV-6360 (MKB)

               v.

ADIDAS AMERICA, INC., ADIDAS AG, and
ADIDAS INTERNATIONAL MARKETING B.V.,

                          Defendants.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      This case is currently scheduled for jury selection and trial beginning November 4, 2024. (Min. Entry dated Feb. 2, 2024.) The Court now decides whether certain of Plaintiff's counterclaims for defamation as asserted in its Amended Answer to Defendants' counterclaims ("Plaintiff's Defamation Counterclaims") are before the Court to be tried together with Plaintiff's other claims.[1] (Pl.'s Mot. to Amend, Correct, or Supplement ("Pl.'s Mot."), Docket Entry No. 261.) Defendants argue that Plaintiff's Defamation Counterclaims are not before the Court, but request that if the counterclaims are allowed to proceed, the Court decide their motion for summary judgment as to these claims. (Defs.' Opp'n to Pl.'s Mot. ("Defs.' Opp'n"), Docket Entry No. 262.)

      For the reasons set forth below, the Court finds that Plaintiff's Defamation Counterclaims may proceed, and grants in part and denies in part Defendants' motion for summary judgment as to the counterclaims.

---

[1] (*See* Second Am. Compl., Docket Entry No. 77; Defs.' Am. Answer, Docket Entry No. 144; Pl.'s Am. Answer, Docket Entry No. 152.)

I.  **Procedural Background**

The Court assumes familiarity with the facts of the case as detailed in the Court's September 24, 2022 decision on Defendants' motion for partial summary judgment (the "September 2022 Decision"), (*see* Sept. 2022 Decision 2–12, Docket Entry No. 247), and provides only a summary of the procedural history pertinent to Plaintiff's Defamation Counterclaims.[2]

In its Amended Answer to Defendants' counterclaims, (*see* Pl.'s Am. Answer 36–38, 54), Plaintiff asserted counterclaims based on:

> (1) a November 22, 2014 email from Paul Jackiewicz, an employee of Adidas' advertising department, to Nick DePaul, a third party, in which Jackiewicz describes Plaintiff as "[s]ome dumbass designer [who] went rogue after a project was scrapped" and states that "they were supposed to take it down," (Pl.'s 56.1 Resp. ¶ 347; Defs.' 56.1 Resp. ¶ 292; *see also* Jackiewicz-DePaul Emails 12, annexed to Decl. of Nathan T. Williams ("Williams Decl.") as Ex. 8, Docket Entry No. 237-1);

> (2) statements that Jackiewicz made to unidentified third parties after November 22, 2014, that a marketing video Plaintiff created to promote its alleged collaboration with Defendants (the "Video"), and the collaboration itself (the "Collaboration"), "'didn't represent [Adidas'] brand,' 'wasn't something that [Adidas] approved of,' and 'wasn't something that was in line with [Adidas'] brand content,'" (Pl.'s 56.1 Resp. ¶ 348; Defs.' 56.1 Resp. ¶ 296); and

> (3) cease-and-desist letters[3] that Defendants sent to two of Plaintiff's customers, Eminent, Inc. and De Facto Inc. (the "August 2018 Letters"), (Pl.'s 56.1 Resp. ¶¶ 350, 353; Defs.' 56.1 Resp. ¶ 349). The August 2018 Letters stated that Eminent and De Facto were "advertising, promoting, offering for sale, or selling LPD products bearing the [Adidas] Marks" which were "not authorized by [Adidas]." (Eminent Letter 4; *see also* De Facto Letter 3–4.) The August 2018 Letters also stated that by "advertising, marketing, promoting, offering for sale, or selling the" products, Eminent and De Facto were "engaging in trademark infringement, dilution, counterfeiting, and unfair

---

[2] (*See* Defs.' Stmt. of Undisputed Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1"), Docket Entry No. 216; Pl.'s Revised Resp. to Defs.' 56.1 ("Pl.'s 56.1 Resp."), Docket Entry No. 220; Pl.'s Rule 56.1 Counter Stmt. of Material Facts ("Pl.'s 56.1"), Docket Entry No. 221; Defs.' Resp. to Pl.'s 56.1 ("Defs.' 56.1 Resp."), Docket Entry No. 226.)

[3] (*See* Aug. 29, 2018 Letter to Eminent, Inc. ("Eminent Letter"), annexed to Decl. of Robert N. Potter ("Potter Decl.") as Ex. 49, Docket Entry No. 217-49; Aug. 29, 2018 Letter to De Facto, Inc. ("De Facto Letter"), annexed to Potter Decl. as Ex. 43, Docket Entry No. 217-43.)

2

>competition under federal and state law," and demanded that they "cease and desist from all use of any mark or designation that is likely to be confused with any of the [Adidas] Marks." (Eminent Letter 4–5; De Facto Letter 4.)

By Memorandum and Order dated March 31, 2020, the Court struck Plaintiff's Defamation Counterclaims (the "March 2020 Decision"). (Mar. 2020 Decision 1, 14, Docket Entry No. 190.) On April 14, 2020, Plaintiff sought partial reconsideration of the March 2020 Decision. (Pl.'s Mot. for Partial Recons., Docket Entry No. 192.) By Memorandum and Order dated July 23, 2020, the Court: (1) granted Plaintiff's motion for partial reconsideration "as to the portion of the March 2020 Decision striking Plaintiff's [Defamation Counterclaims]"; and (2) on reconsideration, determined that Plaintiff could "amend its pleading" to assert these claims (the "July 2020 Decision"). (July 2020 Decision 12–13, 28, Docket Entry No. 196.) Plaintiff did not file an amended pleading to assert the counterclaims.

On April 23, 2021, Defendants moved for partial summary judgment on certain of Plaintiff's claims against them, and certain of their counterclaims against Plaintiff. (Defs.' Mot. for Summ. J., Docket Entry No. 214.) In their summary judgment papers, both parties made arguments addressing Plaintiff's Defamation Counterclaims.[4] In its September 2022 Decision, the Court granted in part and denied in part Defendants' motion for partial summary judgment. (Sept. 2022 Decision 69–70.) The Court also found that because "Plaintiff failed to amend its pleading" regarding Plaintiff's Defamation Counterclaims, they were "not before the Court." (*Id.* at 38 n.10.)

---

[4] (*See, e.g.*, Defs.' Mem. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Summ. J. Mem.") 17, Docket Entry No. 215 (noting that because "the factual underpinnings of [Plaintiff's Defamation Counterclaims] were fully disclosed in" Plaintiff's amended answer, those claims were "addressed in this motion"); Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Summ. J. Opp'n") 3, Docket Entry No. 219 (arguing that Defendants' failure to admit or deny the allegations in the Amended Answer relating to Plaintiff's Defamation Counterclaims and certain affirmative defenses "amount[ed] to admission of those allegations as a matter of law" (emphasis omitted)).)

On September 29, 2023, the parties filed a Joint Proposed Pretrial Order which, among other things, identified the remaining claims and defenses to be tried (the "JPTO"). (JPTO, Docket Entry No. 255.) In its portion of the JPTO, Plaintiff included its Defamation Counterclaims among its list of claims to be tried. (*Id.* at 5–6.) In response, Defendants argued that they were not before the Court in light of the September 2022 Decision. (*Id.* at 7 & n.4.) At a pretrial conference held on February 1, 2024, the parties again raised the status of Plaintiff's Defamation Counterclaims, and the Court directed Plaintiff to file a submission in support of its claim that the counterclaims are "properly before the Court." (Min. Entry dated Feb. 2, 2024.)

On February 14, 2024, Plaintiff filed a letter motion to "explain why all of the defamation claims stated in [its] operative pleadings remain before this Court." (Pl.'s Mot. 1.) On February 27, 2024, Defendants opposed the motion, (Defs.' Opp'n), and on March 6, 2024, Plaintiff filed a reply in further support of its motion, (Pl.'s Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply"), Docket Entry No. 264).

## II. Discussion

### a. Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a

genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (first citing *Anderson*, 477 U.S. at 248; and then citing *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)).

### b. Plaintiff may proceed with its Defamation Counterclaims

The Court finds that Plaintiff's Defamation Counterclaims may proceed because there is no indication that additional discovery is necessary, and the parties appear to agree that the Court can adjudicate the merits of the claim based on the existing summary judgment briefing. (Pl.'s Reply 6 ("Defendants have already moved for summary judgment on [Plaintiff's Defamation Counterclaims]. Therefore, all that is left is for the Court . . . to adjudicate those [c]laims on their merits."); Def.'s Opp'n 7 (requesting that the Court "immediately assess the merits of [Plaintiff's Defamation Counterclaims] based on the parties' existing summary judgment filings" (emphasis omitted)).) The Court is mindful that allowing the claims to proceed may require Defendants to make adjustments to their trial strategy, but any potential prejudice to Defendants is mitigated by the fact that Defendants have been aware of Plaintiff's Defamation Counterclaims since June of 2019, (*see* Pl.'s Am. Answer), and it appears that the parties have had the opportunity to engage in discovery and litigate the claims, as evidenced by their summary judgment papers.

5

Accordingly, the Court allows Plaintiff's Defamation Counterclaims to proceed.

### c. Defendants' motion for summary judgment as to Plaintiff's Defamation Counterclaims

Defendants argue that they are entitled to summary judgment on Plaintiff's Defamation Counterclaims because the statements by Jackiewicz and those in the August 2018 Letters were not defamatory. (Defs.' Summ. J. Mem. 36.)  In support, Defendants contend that: (1) Jackiewicz's characterization of Plaintiff "going 'rogue'" was a non-actionable opinion and "was substantially true given [Plaintiff's] deliberate use of nudity in the Video to antagonize [Adidas] and 'poke the bear'"; (2) "Jackiewicz's other statements were either substantially true because [Adidas] had not 'approved of' the Video or the [Collaboration], or were merely non-actionable opinion about how the products and Videos related to [Adidas'] brand values"; and (3) "[Adidas'] statements in the cease-and-desist letters, made in August 2018, were true given this Court's holding that any authorization to use [Adidas'] trademarks ended no later than May 1, 2015." (*Id.* at 37 (citations and emphasis omitted).)  Defendants also argue that if Plaintiff's Defamation Counterclaims survive summary judgment, Plaintiff's recovery should be limited to nominal damages because the record contains no evidence of injury caused by the statements. (*Id.*)

Plaintiff argues first that the claims should survive summary judgment because the statements by Jackiewicz and those in the August 2018 Letters "were false, published[,] plainly concerned [Plaintiff]," and Defendants "knew the statement[s] [were] false."  (Pl.'s Summ. J. Opp'n 33.)  Second, Plaintiff argues that Jackiewicz's statements "amount to additional instances of actionable defamation for which [Plaintiff] is entitled to hold [Defendants] liable," (*id.* at 32), and the August 2018 Letters "implied that [Plaintiff] sold those customers unauthorized goods and engaged in counterfeiting, trademark infringement, unfair competition, dilution, and unfair

6

and deceptive trade practices," (*id.* at 33). Third, Plaintiff argues that the statements in the August 2018 Letters "are not privileged under the *Noerr-Pennington* doctrine" because Defendants' former in-house counsel "acknowledged during his deposition that the customers [Plaintiff] sold collaboration merchandise to could, in turn, sell said merchandise to their own customers." (*Id.*) Plaintiff asserts that it does not need to prove special damages because the statements were "a direct attack upon the business, trade or profession" of Plaintiff, and were therefore per se defamatory. (*Id.* at 33–34.)

"Defamation . . . is the invasion of the interest in a reputation and good name" and "consist[s] of the twin torts of libel and slander." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (quoting *Hogan v. Herald Co.*, 446 N.Y.S.2d 836, 839 (App. Div.), *aff'd*, 58 N.Y.2d 630 (1982)); *Goldman v. Reddington*, 417 F. Supp. 3d 163, 171 (E.D.N.Y. 2019) (same). "Generally, spoken defamatory words are slander; written defamatory words are libel." *Albert*, 239 F.3d at 265; *see also Grogan v. Blooming Grove Volunteer Ambulance Corp.*, 917 F. Supp. 2d 283, 289 (S.D.N.Y. 2013) (same); *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) ("Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." (quoting *Idema v. Wagner*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000))). "Under New York law[,] a defamation plaintiff must establish five elements: (1) a . . . defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019); *see also Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, No. 22-1834, 2024 WL 959619, at *4 (2d Cir. Mar. 6, 2024) (same); *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). A defamatory statement is one that "tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an

7

evil opinion of [them] in the minds of right-thinking persons, and . . . deprive[s] [them] of their friendly intercourse in society." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 41 (App. Div. 2014)); *see also Biro*, 883 F. Supp. 2d at 456 (quoting *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)). "A statement that tends to injure another in his or her trade, business or profession is defamatory per se." *Biro*, 883 F. Supp. 2d at 456 (quoting *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009)).

"[T]ruth is a complete defense to a defamation claim." *Cicel*, 2024 WL 959619, at *4 (alteration in original) (quoting *Birkenfeld v. UBS AG*, 100 N.Y.S.3d 23, 24 (App. Div. 2019)); *Cain v. Atelier Esthetique Inst. of Esthetics Inc.*, 733 F. App'x 8, 11 (2d Cir. 2018) ("[T]ruth provides a complete defense to defamation claims." (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 6 (1999))); *see also Crowley v. Billboard Mag.*, 576 F. Supp. 3d 132, 148 (S.D.N.Y. 2021) ("[S]tatements that are substantially true cannot be defamatory."); *Reus v. ETC Hous. Corp.*, 164 N.Y.S.3d 692, 697 (App. Div. 2022) ("A defamation action is subject to an absolute defense that the alleged defamatory statements are substantially true." (quoting *Proskin v. Hearst Corp.*, 787 N.Y.S.2d 506, 507 (2005))). "In New York, a statement need not be completely true, but can be substantially true, as when the overall 'gist or substance of the challenged statement' is true." *Chau v. Lewis*, 771 F.3d 118, 130 (2d Cir. 2014) (emphasis omitted) (quoting *Printers II, Inc. v. Pros. Publ'g, Inc.*, 784 F.2d 141, 146–47 (2d Cir. 1986)); *see also Conti v. Doe*, 535 F. Supp. 3d 257, 272 (S.D.N.Y. 2021) ("[A] statement is 'substantially true' only if the statement 'would not have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" (quoting *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 366 (S.D.N.Y. 1998))); *Fleckenstein v. Friedman*, 266 N.Y. 19, 23 (1934); *Fairley v. Peekskill Star*

8

*Corp.*, 445 N.Y.S.2d 156, 159 (App. Div. 1981) ("Substantial truth is all that is necessary to defeat a charge of libel.").

In addition, "[o]rdinarily, opinion statements have absolute protection, and are non-actionable since they are 'not capable of being objectively characterized as true or false.'" *Mestecky v. N.Y.C. Dep't of Educ.*, 791 F. App'x 236, 239 (2d Cir. 2019) (quoting *Celle*, 209 F.3d at 178). "Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Crowley*, 576 F. Supp. 3d at 148 (quoting *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008)). "Distinguishing between assertions of fact and nonactionable expressions of opinion has often proved a difficult task." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995); *see also Sheindlin v. Brady*, 597 F. Supp. 3d 607, 625 (S.D.N.Y. 2022) (same). In distinguishing between opinion and fact, New York courts generally consider:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Rapaport v. Barstool Sports Inc.*, No. 22-2080, 2024 WL 88636, at *2 (2d Cir. Jan. 9, 2024) (quoting *Brian*, 87 N.Y.2d at 51). "Ultimately, '[t]he dispositive inquiry . . . is whether a reasonable reader could have concluded that [the statements were] conveying facts about the plaintiff.'" *Id.* (alterations in original) (quoting *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152 (1993)).

### 1. Jackiewicz's statements

Jackiewicz's statements — that Plaintiff "went rogue after a project was scrapped" and that the Video and Collaboration did not "represent [Adidas'] brand," were not "something that

9

[Adidas] approved of," and were not "something that was in line with [Adidas'] brand content" — imply that no one at Defendants' business had authorized the Collaboration. (Pl.'s 56.1 Resp. ¶¶ 347–348; Defs.' 56.1 Resp. ¶¶ 292, 296.) As set forth in the September 2022 Decision, however, the record indicates that an employee of Defendants "spoke with Plaintiff's founder extensively about the Collaboration and indicated that upper management approved of the designs and gave Plaintiff permission to move forward." (Sept. 2022 Decision 41; *see also* Mann-Fainlight Emails dated June 12–26, 2014, at 5, annexed to Decl. of Jarrett Mann ("Mann Decl.") as Ex. 23, Docket Entry No. 178-23; Mann-Fainlight Emails dated July 17–22, 2014, at 3–4, annexed to Mann Decl. as Ex. 27, Docket Entry No. 178-27.) "[A] reasonable jury [could] conclude that Plaintiff had a legitimate Collaboration with Defendants," (Sept. 2022 Decision 41 (citing *Conti*, 535 F. Supp. 3d at 272)), and could also conclude that Jackiewicz's statements were not substantially true, *see Jewell*, 23 F. Supp. 2d at 366 (explaining that a statement is "substantially true" only if the statement would not "have a different effect on the mind of the reader from that which the pleaded truth would have produced" (quoting *Fleckenstein*, 266 N.Y. at 23)). Moreover, Jackiewicz's statements "convey[] facts" about Plaintiff by stating that Plaintiff's products were not authorized by Defendants, and are therefore not statements of opinion. *Rapaport*, 2024 WL 88636, at *2 (quoting *Gross*, 82 N.Y.2d at 152).

Accordingly, the Court denies Defendants' motion for summary judgment as to Jackiewicz's statements.

### 2. The August 2018 Letters

The statements made in the August 2018 Letters — that the products sold by Eminent and De Facto were "not authorized" by Defendants, (Eminent Letter 4; De Facto Letter 3–4) — were not defamatory because they were substantially true. As the Court noted in the September 2022 Decision, "Plaintiff's implied license to use Defendants' trademark [ended] as of May 1,

10

2015." (Sept. 2022 Decision 55 (citing Mar. 2019 Decision 12–14)). Thus, at the time of Defendants' August 2018 Letters, Plaintiff no longer had Defendants' authorization to use their trademark. (Mar. 2019 Decision 14 (explaining that "Plaintiff's implied license to use Defendants' trademark" was terminated "as of May 1, 2015")). The statements in the August 2018 Letters characterizing certain products as "not authorized" were therefore substantially true. *See Sheindlin*, 597 F. Supp. 3d at 626 ("A statement is 'substantially true' if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." (quoting *Conti*, 535 F. Supp. 3d at 272)).

Plaintiff argues that the implication that its products were not authorized is false because Eminent and De Facto were entitled to sell off any remaining stock they purchased from Plaintiff that was part of the alleged Collaboration. (*See* Pl.'s Summ. J. Opp'n 33 (arguing that any retailer "LPD sold collaboration merchandise to could, in turn, sell said merchandise to their own customers"); *see also* Tr. of Feb. 26, 2019 Dep. of Paul Loving 99:16–100:12, annexed to Decl. of H. Forrest Flemming, III as Ex. 7, Docket Entry No. 227-7 (testifying that a "retailer [could] sell the product until it is gone").) This would require the Court to infer that the products being marketed and sold by Eminent and De Facto in August of 2018 were produced by Plaintiff prior to the May 1, 2015 termination of any implied license. The Court declines to draw such an inference because "it is undisputed that Plaintiff continued to use Defendants' Marks after its license expired," (Sept. 2022 Decision 55), and Plaintiff does not point to any evidence in the record that the products referenced in the August 2018 Letters were created before any implied license expired. Plaintiff has therefore failed to create a genuine dispute of fact as to whether Defendants' statement that the products were "not authorized" was substantially true.

11

Accordingly, the Court grants Defendants' motion for summary judgment as to the statements contained in the August 2018 Letters.

### 3. Nominal and actual damages

The Court declines to limit Plaintiff's potential recovery for Jackiewicz's statements to nominal damages at this stage in the litigation.

"New York law has long recognized that '[w]hen statements fall within' established categories of *per se* defamation, 'the law presumes that damages will result, and they need not be alleged or proven.'" *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011) (footnote omitted) (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992)); *Paravas v. Tran*, No. 21-CV-807, 2022 WL 718842, at *7 (S.D.N.Y. Feb. 22, 2022) ("Defamation *per se* . . . includes statements impugning the plaintiff's business reputation and special damages need not be pled."), *report and recommendation adopted*, 2022 WL 718587 (S.D.N.Y. Mar. 10, 2022); *Yesner v. Spinner*, 765 F. Supp. 48, 52 (E.D.N.Y. 1991) ("It has long been the law in New York that a defamatory statement that is a direct attack upon the business, trade or profession of the plaintiff is considered defamation 'per se', and therefore actionable without any proof of special damages."); *see also Celle*, 209 F.3d at 179 ("If a statement is defamatory per se, injury is assumed."). "In such a case, '[e]ven where the plaintiff can show no actual damages at all, a plaintiff who has otherwise shown defamation may recover at least nominal damages.'" *Celle*, 209 F.3d at 179 (alteration in original) (quoting *Van-Go Trans. Co. v. N.Y.C. Bd. of Educ.*, 971 F. Supp. 90, 100 (E.D.N.Y. 1997)); *Massre v. Bibiyan*, No. 12-CV-6615, 2014 WL 2722849, at *4 (S.D.N.Y. June 16, 2014) (same).

The Court reserves ruling until trial on the issue of whether Jackiewicz's statements — to the extent the jury finds them to be defamatory — constitute defamation per se. In addition, the Court declines to limit any recovery by Plaintiff to nominal damages. Plaintiff contends that it

suffered actual damages because the allegedly defamatory statements led to decreased media attention and impacted the company's valuation, and asserts that Fainlight will testify to these facts at trial. (Pl.'s 56.1 Resp. ¶¶ 374, 348.) Moreover, the two cases cited by Defendants do not support their position that the Court should limit actual damages at summary judgment. (*See* Defs.' Summ. J. Mem. 37–38 (first citing *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002); and then citing *Celle*, 209 F.3d 163).)

In *Fashion Boutique*, the plaintiff challenged the district court's decision to exclude expert testimony addressing the issue of actual damages, and also challenged the court's jury instruction limiting "general damages to the injury to [the plaintiff's] business reputation in the minds of three individual customers." 314 F.3d at 55, 58–59, 61. In noting that "[a]ctual damages . . . must be proven," the Second Circuit held that the district court did not abuse its discretion when it excluded the expert testimony and that it properly instructed the jury regarding limitations on the plaintiff's damages. *Id.* at 59–62. The Court did not address whether district courts should limit the recovery of actual damages at summary judgment. *Id.* Similarly, in *Celle*, the jury concluded that the plaintiff had not suffered actual damages and awarded him $1.00 in nominal damages and $15,000 in punitive damages. 209 F.3d at 171–72. *Celle* does not suggest that district courts should limit recovery of actual damages before trial, but rather demonstrates that a plaintiff who cannot establish actual damages is entitled to nominal damages. *Id.* at 179.

The Court declines to limit any potential recovery arising out of Jackiewicz's statements to nominal damages.

### 4. Punitive damages

Defendants argue that Plaintiff cannot recover punitive damages for its defamation counterclaims because Plaintiff cannot establish that the alleged defamatory statements were

made "out of hatred, ill will, spite, criminal mental state or that traditionally required variety of common-law malice." (Defs.' Summ. J. Mem 38 (quoting *Prozeralik v. Cap. Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 480 (1993)).)

Plaintiff contends that it is entitled to punitive damages because Defendants made false statements without "caring whether [they were] true or false." (Pl.'s Summ. J. Opp'n 34 n.7 (quoting *Pecue v. West*, 233 N.Y. 316, 323 (1922)).)

"Under New York law, punitive damages in a defamation case are justified 'to punish a person for outrageous conduct which is malicious, wanton, reckless, or in willful disregard for another's rights.'" *DiBella v. Hopkins*, 403 F.3d 102, 122 (2d Cir. 2005) (quoting *Prozeralik*, 82 N.Y.2d at 479–80). "This is not automatically satisfied by the requisite finding of 'actual malice' . . . [but] rather, it requires 'hatred, ill will, spite, criminal mental state or that traditionally required variety of common-law malice.'" *Id*. (quoting *Prozeralik*, 82 N.Y.2d at 480); *Paravas*, 2022 WL 718842, at *9 ("To award plaintiff punitive damages, the [c]ourt must find that plaintiff has established common law malice, showing by a preponderance of the evidence that the libelous statements were made out of hatred, ill will, or spite." (quoting *Daniels v. Kostreva*, No. 15-CV-3141, 2017 WL 823583, at *13 (E.D.N.Y. Jan. 12, 2017), *report and recommendation adopted*, 2017 WL 519227 (E.D.N.Y. Feb. 8, 2017))); *Stern v. Cosby*, 645 F. Supp. 2d 258, 286 (S.D.N.Y. 2009) ("To be entitled to punitive damages, a defamation plaintiff must prove that the defendant acted, toward the plaintiff, with 'hatred, ill will, spite, criminal mental state or that traditionally required variety of common-law malice.'" (quoting *Prozeralik*, 82 N.Y.2d at 479–80)).

Plaintiff has not shown that Jackiewicz acted with hatred, ill will, or spite, or that he deliberately attempted to injure Plaintiff. As noted in the September 2022 Decision, although

Plaintiff argues that Defendants made "a false charge, . . . not caring whether it was true or false," Plaintiff "does not point to evidence in the record from which a reasonable jury could find that Defendants acted with hatred, ill will, or spite toward Plaintiff." (Sept. 2022 Decision 45.) Moreover, there is a genuine dispute as to whether Jackiewicz knew his statements were false, *supra* section II.c.1, and Plaintiff does not provide any evidence of his state of mind when he made the allegedly defamatory statements.[5]  Thus, Plaintiff has not provided the sort of evidence necessary to survive a motion for summary judgment. *See, e.g.*, *Carroll v. Trump*, 680 F. Supp. 3d 491, 495, 516–17 (S.D.N.Y. 2023) (allowing punitive damages claim to proceed to trial where the defendant "fail[ed] to address any of the relevant evidence, including . . . his deposition testimony with respect to the circumstances in which he made the statements" and a jury had already found "substantially similar" statements were made with common-law malice in a "closely related case"); *Paravas*, 2022 WL 718842, at *9 (finding that the plaintiff sufficiently established that the defendant acted out of spite when the defendant "intentionally created a fake email account purporting to be [p]laintiff and sent a defamatory email meant to undermine her business credibility"); *Stern*, 645 F. Supp. 2d at 286 (holding that there was "sufficient evidence" that the defendant "acted with hatred, ill will, or spite to permit the claim to reach the jury" when the plaintiff presented evidence that the defendant told a third party that "she was going to 'nail [the plaintiff] to the wall' and 'destroy' him," among other things); *cf. Morsette v. "The Final Call"*, 764 N.Y.S.2d 416, 421 (App. Div. 2003) (explaining that "a triable issue of common-law

---

[5] In response to Defendants' assertion that Plaintiff "has no evidence as to Mr. Jackiewicz's motivations or mental state" in making the allegedly defamatory statements, Plaintiff denies this assertion and cites to certain paragraphs of its own statement of material facts. (Pl.'s 56.1 Resp. ¶¶ 378–379 (citing Pl.'s 56.1 ¶¶ 268, 290–297).) The cited paragraphs either do not involve statements by Jackiewicz or merely repeat the allegedly defamatory statements, and do not provide insight into his mental state when making the statements. (*See* Pl.'s 56.1 ¶¶ 268, 290–297.)

malice is raised only if a reasonable jury could find that the speaker was *solely* motivated by a desire to injure plaintiff, and that there must be some evidence that the animus was 'the one and only cause for the publication'" (quoting *Stukuls v. New York*, 42 N.Y.2d 272, 282 (1977))).

Accordingly, the Court dismisses Plaintiff's claim for punitive damages arising out of Jackiewicz's statements.

### III. Conclusion

For the foregoing reasons, Plaintiff may proceed with its Defamation Counterclaim based on Jackiewicz's statements because the Court denies Defendants' motion for summary judgment as to this claim. The Court grants Defendants' motion for summary judgment as to Plaintiff's Defamation Counterclaims based on the August 2018 Letters and as to Plaintiff's claim for punitive damages arising out of Jackiewicz's statements.

Dated: August 22, 2024
      Brooklyn, New York

                                      SO ORDERED:

                                      _____s/MKB_____
                                      MARGO K. BRODIE
                                      United States District Judge