UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------

LPD NEW YORK, LLC,

                        Plaintiff,

                        v.

ADIDAS AMERICA, INC. and ADIDAS AG,

                        Defendants.

------------------------------------------------------------

ADIDAS AMERICA, INC., ADIDAS AG, and
ADIDAS INTERNATIONAL MARKETING
B.V.,

                        Counterclaim-Plaintiffs,

                        v.

LPD NEW YORK, LLC and BENJAMIN
FAINLIGHT,

                        Counterclaim-Defendants.

------------------------------------------------------------

**MEMORANDUM & ORDER**
15-CV-6360 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff LPD New York, LLC, commenced the above-captioned action on November 5,

2015, against Defendants Adidas America, Inc. ("Adidas America") and Adidas AG ("Adidas

AG").  (Compl., Docket Entry No. 1.)  On May 4, 2018, Plaintiff filed a Second Amended

Complaint ("SAC"), asserting claims for breach of quasi-contract, promissory estoppel, implied

license, unjust enrichment, and defamation.  (SAC, Docket Entry No. 77.)  Defendants answered

the SAC on April 22, 2019, and, along with Counterclaim-Plaintiff Adidas International

Marketing B.V. ("Adidas International"), asserted seven counterclaims against Plaintiff and

Counterclaim-Defendant Benjamin Fainlight.[1]  (Defs.' Answer, Docket Entry No. 144.)  Plaintiff

filed its Amended Answer and Affirmative Defenses to Defendants' Counterclaims on June 11,

2019.  (Am. Answer, Docket Entry No. 152.)  Trial is scheduled to begin on November 4, 2024.

Currently before the Court are the parties' motions *in limine*.[2]

      For the reasons set forth below, the Court grants in part and denies in part Adidas' motion

*in limine* and denies LPD's motion *in limine*.

## I.   **Adidas' motion *in limine***

      Adidas moves to exclude evidence and argument relating to (1) the republication of a

statement by Adidas employee Brett Anderson that the alleged collaboration between Adidas and

LPD was "illegitimate" ("Anderson's Statement"); (2) damages not related to LPD's reliance on

Adidas' alleged promises; and (3) LPD's lost business value damages.  (Adidas Mem. 2–16.)

Adidas also moves to exclude deposition testimony designations of Jarrett Mann, Kaori Cipriano,

Linda Fainlight, and Sara Vanderhoff as untimely and improper and to exclude the deposition

testimony of John Akers, Chris Grancio, and Whitney Grant as not relevant to the claims that

will be tried.  (*Id.* at 16–20.)

      As explained below, the Court excludes evidence or argument concerning republication

---

[1]  The Court refers to Defendants-Counterclaim Plaintiffs Adidas America and Adidas AG and Counterclaim-Plaintiff Adidas International collectively as "Adidas" and refers to Plaintiff and Counterclaim Defendants LPD New York, LLC, and Fainlight as "LPD."

[2]  (Adidas Mot. *in Limine* ("Adidas Mot."), Docket Entry No. 265; Adidas Mem. in Supp. of Adidas Mot. ("Adidas Mem."), Docket Entry No. 266; Decl. of H. Forrest Flemming III in Supp. of Adidas Mot. ("Flemming Decl."), Docket Entry No. 267; LPD Opp'n to Adidas Mot. ("LPD Opp'n"), Docket Entry No. 273; Adidas Reply in Supp. of Adidas Mot. ("Adidas Reply"), Docket Entry No. 275; LPD Mot. *in Limine* ("LPD Mot."), Docket Entry No. 272; LPD Mem. in Supp. of LPD Mot. ("LPD Mem."), Docket Entry No. 272-1; Adidas Opp'n to LPD Mot. ("Adidas Opp'n"), Docket Entry No. 276; LPD Reply in Supp. of LPD Mot. ("LPD Reply"), Docket Entry No. 277.)

of the allegedly defamatory statements and LPD's alleged lost business value damages but declines to exclude evidence or argument concerning LPD's claimed reliance damages.  In addition, the Court declines to exclude deposition testimony of Mann, Cipriano, Linda Fainlight, and Vanderhoof and defers ruling on the deposition testimony of Akers, Grancio, and Grant.

      **a.**    **Evidence and argument concerning republication of allegedly defamatory statements**

Adidas argues that "LPD should be precluded from offering evidence or argument concerning whether V Magazine repeated" a statement from Adidas employee Brett Anderson "that the alleged collaboration between [A]didas and LPD was 'illegitimate.'" (Adidas Mem. 2 (citations omitted).)  In support, Adidas argues that "such evidence is irrelevant under New York law" because "it is well-established that [defamation] damages must be based on the extent of circulation based on initial publication and evidence of the circulation of the slander in republished form is inadmissible at trial."  (*Id.* (alteration in original) (emphasis omitted) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 61 (2d Cir. 2002)).)  Adidas also argues that, although evidence of republication may be admissible "if the defendant 'was responsible for or ratified the republication,'" LPD "cannot now invoke this narrow exception to the rule against republication evidence because LPD failed to allege [in its pleading] that Adidas was responsible for or ratified the . . . republication."[3] (Adidas Reply 1.)

LPD argues that it is "entitled to explore whether . . . and to what extent . . . [A]didas[] was responsible for or ratified the republication of [the allegedly] defamatory statements."  (LPD Opp'n 3–4.)  In support, LPD argues that the Second Circuit's decision in *Fashion Boutique of*

---

[3] In its reply brief, Adidas also states that, to the extent its arguments "concern[] a pleading deficiency," it "requests that the Court construe [its] motion . . . as a motion for judgment on the pleadings under Rule 12(c)."  (Adidas Reply 1 n.1 (internal quotation marks omitted).)

*Short Hills, Incorporated v. Fendi USA, Incorporated* provides that a party may recover for

republication of defamatory statements where "the original author was responsible for or ratified

the republication."  (*Id.* at 4 (emphasis omitted) (quoting *Fashion Boutique*, 314 F.3d at 59).)

 "[A]nyone giving a statement to a representative of a newspaper authorizing or intending

its publication is responsible for any damage caused by the publication."  *D'Olimpio v. Crisafi*,

718 F. Supp. 2d 340, 356 n.8 (S.D.N.Y. 2010) (quoting *Campo v. Paar*, 239 N.Y.S.2d 494, 498

(1963)), *aff'd*, 462 F. App'x 79 (2d Cir. 2012); *Pisani v. Staten Island Univ. Hosp.*, No. 06–CV–

1016, 2008 WL 1771922, at *10 (E.D.N.Y. Apr. 15, 2008) (same) (quoting *Croton Watch Co.,

Inc. v. Nat'l Jeweler Mag., Inc.*, No. 06-CV-662, 2006 WL 2254818, at *6 n.6 (S.D.N.Y. Aug. 7,

2006)).  However, "a plaintiff may not recover damages from the original author for . . . slander

arising from the republication of defamatory statements by a third party absent a showing that

the original author was responsible for or ratified the republication."  *Fashion Boutique*, 314

F.3d at 59; *see Pisani*, 2008 WL 1771922, at *10 (quoting *Fashion Boutique*, 314 F.3d at 59);

*see also Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 178 n.7 (S.D.N.Y. 2021)

("[U]nder New York law, [the defendants cannot] be held responsible for the re-publication of

the article by third parties absent allegations . . . that they were personally involved in the re-

publication." (citing *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 670–71 (S.D.N.Y.

2007))); *Pasqualini*, 498 F. Supp. 2d at 670–71 (noting that "republication of the defamatory

material by a third party cannot be attributed to the original publisher . . . absent her personal

involvement in or ratification of the republication"); *Levy v. Smith*, 18 N.Y.S.3d 438, 439 (App.

Div. 2015) ("Generally, '[o]ne who makes a defamatory statement is not responsible for its

recommunication without his authority or request by another over whom he has no control.'"

(quoting *Hoffman v. Landers*, 537 N.Y.S.2d 228, 231 (App. Div. 1989))).  Therefore, in order to

prevail on a defamation claim based on a republication, a party must establish that the originator

of the defamatory statement was responsible for or ratified the allegedly defamatory statements.[4]

New York courts have permitted a plaintiff "to prove at trial a theory of liability not

specifically pleaded if the pleadings give notice of the transactions or occurrences intended to be

proved and defendant does not demonstrate any prejudice therefrom." *Cole v. O'Tooles of*

*Utica, Inc.*, 643 N.Y.S.2d 283, 285 (App. Div. 1996) (citing *Fried v. Seippel*, 80 N.Y.2d 32, 42

(1992)); *see also Westport Ins. Corp. v. Napoli, Kaiser & Bern*, 746 F. Supp. 2d 502, 508

(S.D.N.Y. 2010) (same). However, plaintiffs have been prevented from asserting new theories

of liability during or shortly before trial where doing so would "require the parties to undertake

further discovery and to either litigate a motion for summary judgment or proceed to trial on

---

[4] Some district courts have applied a foreseeability standard under which the originator of the defamatory statement is liable for the foreseeable republication of the statement. *See, e.g.*, *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 356 n.8 (S.D.N.Y. 2010) ("The rationale for making the originator of a defamatory statement liable for its foreseeable republication is the strong causal link between the actions of the originator and the damage caused by the republication." (quoting *Van-Go Transp. Co. v. N.Y.C. Bd. of Educ.*, 971 F. Supp. 90, 102 (E.D.N.Y. 1997))). The New York Court of Appeals has not decided whether a defendant can be held liable for restatements if he participated in the original publication with "knowledge or a reasonable expectation that republication was likely." *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 541 n.2 (1980) (leaving open the possibility that three reporters could have been held legally responsible for the republication of their article in book form "had plaintiff been able to demonstrate that they participated in the original publication with knowledge or a *reasonable expectation* that republication was likely" (emphasis added)). In its most recent defamation case that discusses republication, the Court of Appeals acknowledged that *Karaduman* left open the question of whether a claimant can proceed on a foreseeability of republication theory and found that even if the court were to adopt a foreseeability standard, the plaintiff could not meet it. *Geraci v. Probst*, 15 N.Y.3d 336, 342–44 (2010); *see also Burton v. Label, LLC*, 344 F. Supp. 3d 680, 700 (S.D.N.Y. 2018) (noting that the New York Court of Appeals "has not definitely answered the question" of whether a foreseeability standard applies to claims that the originator of a defamatory statement is liable for republication of the statement (citation omitted)). In *Geraci*, the Court of Appeals rested its decision on the fact that the defendants "had no knowledge of and played no role in the republication or its implementation." *Geraci*, 15 N.Y.3d at 342–44 (internal quotation marks omitted).

these claims," *Barclay v. Deko Lounge*, No. 10-CV-0190, 2014 WL 198317, at *2 (E.D.N.Y. Jan. 14, 2024), or where the opposing party had "no opportunity to prepare a rebuttal" to the new theories, *Hubbard v. City of New York*, 924 N.Y.S.2d 533, 534 (App. Div. 2011); *see also Monz v. Rocky Point Fire Dist.*, 853 F. Supp. 2d 277, 285 (E.D.N.Y. 2012) ("[T]o allow [the plaintiff] to raise and argue a new theory of recovery at trial would seriously prejudice [the defendants] who had no opportunity to conduct discovery with respect to this issue or develop a defensive strategy."), *aff'd*, 519 F. App'x 724 (2d Cir. 2013); *Chisholm v. Sloan-Kettering*, No. 09-CV-8211, 2011 WL 2015526, at *5 (S.D.N.Y. May 13, 2011) (granting the defendants' motion to exclude evidence and jury instructions relating to "a new theory of recovery [asserted] for the first time on the eve of trial"); *Munson v. N.Y. Seed Imp. Co-op., Inc.*, 64 N.Y.2d 985, 986–87 (1985) (finding that certain allegations in support of an affirmative defense to counterclaims "[did] not appear in the plaintiff's pleadings" and the "failure to plead these matters result[ed] in a waiver which entitles defendant to summary judgment on [the] counterclaim" arising out of those allegations); *Thompson v. N.Y.C. Housing Auth.*, 623 N.Y.S.2d 257, 258–59 (App. Div. 1995) (finding that the trial court erred in "submitting [a] theory of liability to the jury" where the "theory of liability was not contained in either the plaintiff's pleadings or his bill of particulars").

In the SAC, LPD alleges that Adidas "published [Anderson's Statement] and perhaps, other false statement(s) to V Magazine, and perhaps, others," and that LPD has suffered damages "[a]s a consequence of [Adidas'] publication of false statement(s)." (SAC ¶¶ 128, 131.) LPD also alleges that V Magazine "disseminated [Adidas'] false allegation to others in the fashion press and industry" and that one of LPD's Japanese customers doubted the legitimacy of the alleged collaboration and refused to pay for pieces it had ordered "presumably because V

Magazine disseminated [Adidas'] false allegation that the collaboration was illegitimate."
(SAC ¶¶ 89, 95; *see also* Am. Answer ¶ 92-8.)  LPD does not, however, allege any specific
instances of republication or that Adidas was responsible for or ratified any of V Magazine's
"disseminat[ion]" of Anderson's Statement.  (*See generally* SAC; Am. Answer.)  Although LPD
alleges Adidas never publicly "acknowledged the legitimacy of the . . . collaboration" and did
not "market[] and publicize[] the . . . collaboration," (SAC ¶ 93), it does not cite any authority
establishing that this conduct, without more, is sufficient to demonstrate that the original author
is responsible for or ratified the republication of the original statement.

LPD has thus failed to make the showing necessary to hold Adidas liable for V
Magazine's republication of Anderson's Statement, which bars LPD from presenting evidence of
any such republication at trial.  *See Fashion Boutique*, 314 F.3d at 59 ("[A] plaintiff may not
recover damages from the original author for . . . slander arising from the republication of
defamatory statements by a third party absent a showing that the original author was responsible
for or ratified the republication.  Evidence of such republication is not admissible at trial, even to
prove widespread dissemination of the defamatory statements." (citations omitted)); *Kesner*, 515
F. Supp. 3d at 178 n.7 (noting that the defendants "could not be held responsible for the re-
publication of the article by third parties absent allegations . . . that they were personally
involved in the republication" and finding that the plaintiff made no such allegations); *Croy v.
A.O. Fox Mem'l Hosp.*, 68 F. Supp. 2d 136, 144 (N.D.N.Y. 1999) (finding that the defendant
could not be held liable for republished statements because the "[c]omplaint and supporting
papers [were] entirely devoid of any allegations of [the defendant's] involvement in the
republication of the information contained in the [allegedly defamatory republication]"); *Wilcox
v. Newark Valley Cent. Sch. Dist.*, 11 N.Y.S.3d 703, 708 (App. Div. 2015) (finding that "proof of

republication" offered at trial "was . . . improper given the absence of evidence that defendants had any knowledge of or played any role in such republication" (citations omitted)); *cf. Monz*, 853 F. Supp. 2d at 285 (finding that the defendant would be "seriously prejudice[d]" if the plaintiff were permitted to "raise and argue a new theory of recovery at trial" because they "had no opportunity to conduct discovery with respect to this issue or develop a defensive strategy"); *Chisholm*, 2011 WL 2015526, at *5 (excluding evidence related to "a new theory of recovery [asserted] for the first time on the eve of trial"); *Barksdale v. N.Y.C. Transit Auth.*, 741 N.Y.S.2d 697, 698 (App. Div. 2002) (mem.) (finding that the trial court "properly precluded plaintiff from submitting proof at trial relating to [a] new theory of liability" that was not raised in the plaintiff's "notice of claim").

Accordingly, the Court grants Adidas' motion to exclude evidence or argument concerning the republication of Anderson's Statement.[5]

### b. Evidence concerning damages not related to LPD's reliance on Adidas' alleged promises

Adidas asserts that LPD should be precluded from seeking "three additional categories of damages" arising out of Adidas' alleged promise that LPD's "designs were fully approved such that [LPD] was entitled to sell collaboration merchandise bearing certain [A]didas [Marks]" (the "Promise").[6] (Adidas Mem. 3–4 (first and third alterations in original) (citations omitted).)  In

---

[5]  The parties filed their motions *in limine* prior to the Court's August 22, 2024 decision allowing defamation claims based on certain statements by another Adidas employee, Paul Jackiewicz, to proceed to trial.  Neither party addresses LPD's alleged damages arising out of Jackiewicz's statements, and the Court's holding is therefore limited to Anderson's Statements.

[6]  Adidas asserts that LPD seeks damages for "(1) marketing and advertising expenses for the '[c]ollaboration' products; (2) '[c]ost of [g]oods' for those products; and (3) '[c]ompensation for [two employees'] [t]ime [d]edicated to the . . . [c]ollaboration [c]apsule."  (Adidas Mem. 4 (fifth alteration in original) (citations omitted).)  LPD asserts that these damages constitute "out-of-pocket expenses," "labor costs," and "material costs" that qualify as reliance damages.  (LPD Opp'n 6.)

support, Adidas argues that "reliance damages are available only for efforts rendered useless as a consequence of the failure to keep the alleged promise," and "LPD's expenses incurred to manufacture, ship, market, and sell Collaboration products [were] not 'rendered useless'" because LPD sold Collaboration products for "over three years" after the Promise.  (*Id.* at 5 (internal quotation marks omitted) (quoting *Summit Props. Int'l, LLC v. Ladies Pro. Golf Ass'n*, No. 07-CV-10407, 2010 WL 4983179, at *6 (S.D.N.Y. Dec. 6, 2010)); *see also* Adidas Reply 2–4.)  Adidas also argues that, "[e]ven if LPD could show that its expenditures were 'wasted,' LPD cannot show that they were wasted because of [Adidas'] failure to keep [the Promise]."  (Adidas Mem. 6 (citing *Kleartex (U.S.A.), Inc. v. Kleartex SDN BHD*, No. 91-CV-4739, 1994 WL 733688, at *7 n.6 (S.D.N.Y. June 9, 1994)); *see also* Adidas Reply 4–5.)

LPD "does not dispute that" Adidas may "present evidence and argue at trial that LPD's claimed reliance damages were not rendered useless under the circumstances of this case," but argues that the Court should not require LPD to prove before trial "that the expenses it incurred in reliance on the [Promise] were not rendered useless."  (LPD Opp'n 11 (emphasis omitted).)  In support, LPD contends that its damages should only be limited if Adidas "carries its burden to prove that LPD's reliance recovery [should] be offset by the amount of any loss that [Adidas] . . . can prove with certainty [that LPD] would have . . . suffered had" Adidas not breached the Promise.  (*Id.* at 10.)  LPD also argues that the Promise necessarily implies that "LPD could advertise for sale, sell all [collaboration merchandise], manufacture, and deliver any such products," and therefore the damages it seeks "all fall within the Second Circuit's recognized definition of reliance damages."  (*Id.* at 6–9.)

Where a plaintiff invokes the doctrine of promissory estoppel to "create 'a new right in the interests of justice' with relief designed to achieve equity," the "plaintiff 'is not entitled to the

benefit of the bargain because there was no bargain'" — the plaintiff is entitled only "to those expenses that [the] plaintiff incurred in relying on [the] defendant's alleged promise." *Clifford R. Gray, Inc. v. LeChase Const. Servs.*, 857 N.Y.S.2d 347, 350 (App. Div. 2008) (first quoting *Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*, No. 98-CV-861, 2003 WL 1345136, at *4 (S.D.N.Y. Mar. 19, 2003); and then quoting Restatement (Second) of Contracts § 90, cmt. d, illus. 8, 12 (Am. L. Inst. 1981)); *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 46 (2d Cir. 1995) ("[T]he damages recoverable in a promissory estoppel case are sometimes referred to as 'reliance damages,' namely, the actual expenditure made in preparation for performance or in performing the work which has been induced by the defendant-promisor."); *That's What She Said, Inc. v. Gutter Games Ltd.*, No. 22-CV-4230, 2024 WL 3678473, at *11 (S.D.N.Y. Aug. 5, 2024) ("[U]nder New York law, promissory estoppel permits recovery only of 'reliance damages[.]'" (quoting *Cyberchron*, 47 F.3d at 46)); *Cosan v. St. Eats, Ltd.*, No. 15-CV-858, 2016 WL 8416456, at *1 (W.D.N.Y. Mar. 14, 2016) (recognizing that expectation damages cannot be recovered where there was no meeting of the minds), *report and recommendation adopted*, No. 15-CV-858, 2016 WL 8376840 (W.D.N.Y. Apr. 8, 2016); *cf. Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 646 F. App'x 25, 28 (2d Cir. 2016) ("New York allows a party to recover 'damages based on his reliance interest, including expenditures made in preparation for performance or in performance.'" (citation omitted)).

Thus, reliance damages include "expenses of preparation and of part performance, as well as other foreseeable expenses incurred in reliance upon the [promise]." *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 729 (2d Cir. 1992) (citations omitted). However, "courts will not 'knowingly put the plaintiff in a better position than he would have occupied had the contract been fully performed.'" *Id.* (quoting Fuller & Purdue, *The Reliance Interest in Contract*

*Damages*, 46 Yale L.J. 52, 59 (1936)); *see also Paragon Digit. Lifestyle Inc. v. Adaptive Micro-Ware, Inc.*, No. 20-CV-4725, 2022 WL 4383999, at *9 (S.D.N.Y. Sept. 22, 2022) ("[R]eliance damages are about restoration and strive to place injured parties in the same position as they were prior to the execution of the contract, not to bestow a 'windfall' on injured parties." (citation omitted)); *Alto Lending, LLC v. Altobridge Ltd.*, No. 12-CV-7391, 2018 WL 3300636, at *4 (S.D.N.Y. Jan. 19, 2018) ("Reliance damages . . . are intended to place plaintiffs in the same position as they were prior to the execution of the contract." (quoting *Summit Props.*, 2010 WL 4983179, at *5)).  "Thus, a reliance recovery will be offset by the amount 'of any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been fully performed.'"  *Bausch*, 977 F.2d at 729 (first quoting Restatement (Second) of Contracts § 349 (1979); and then citing *Farash v. Sykes Datatronics, Inc.*, 59 N.Y.2d 500, 504 (1983)).

In addition, district courts have held that "reliance damages are available only for efforts 'rendered useless' as a consequence of the breach" because compensating a "non-breaching party [who] continues to receive benefits under the terms of a contract" would "constitute a windfall" for that party.  *Summit Props.*, 2010 WL 4983179, at *6 (quoting *VS Int'l, S.A. v. Boyden World Corp.*, 862 F. Supp. 1188, 1198 (S.D.N.Y. 1994)); *ADYB Engineered for Life, Inc. v. EDAN Admin. Servs. (Ireland) Ltd.*, No. 19-CV-7800, 2024 WL 2125431, at *14 (S.D.N.Y. May 10, 2024) ("[T]he non-breaching party can recover [out of pocket] expenditures 'to the extent that they are wasted if performance is abandoned.'" (quoting *Lieberman v. Templar Motor Co.*, 236 N.Y. 139, 149 (1923))); *Kleartex (U.S.A.), Inc. v. Kleartex SDN BHD*, No. 91-CV-4739, 1994 WL 733688, at *7 n.6 (S.D.N.Y. June 9, 1994) (explaining that reliance damages are "available . . . only for wasted efforts" and declining to award such damages because the plaintiff

"claim[ed] to have obtained and filled substantial orders based on its marketing efforts");
*Paragon Digit.*, 2022 WL 4383999, at *9 ("[R]eliance damages are available only for efforts
'rendered useless' as a consequence of the breach." (alteration in original) (quoting *Summit
Props.*, 2010 WL 4983179, at *6)); *see also Lieberman*, 236 N.Y. at 149 (explaining that
reliance damages include expenses "reasonably made in part performance of the contract, to the
extent that they are wasted if performance is abandoned").

    In the September 24, 2022 decision on Adidas' motion for partial summary judgment, the
Court determined that there were genuine disputes of material fact as to whether LPD reasonably
relied on Adidas' promises that (1) LPD's "designs were fully approved such that [LPD] was
entitled to sell collaboration merchandise bearing [Adidas' marks]," *i.e.*, the Promise, and (2)
that Adidas "would pay for all pattern and sample making costs incurred in developing the
Collaboration and Classics Capsules" (the "September 2022 Decision").[7]  (Sept. 2022 Decision
30–31, Docket Entry No. 247 (citations omitted).)  The Court concluded that, because "[t]he
promises [LPD] relies on lack[ed] essential terms," LPD's recovery is "limited to reliance
damages."  (*Id.* at 33.)

    The parties dispute whether certain costs that LPD seeks to recover were incurred in
reliance on the Promise.  Adidas asserts it did not "promise that [A]didas would pay for, or assist
in, or support the manufacture, marketing, or sale of [c]ollaboration products, nor . . . that
[A]didas would purchase [c]ollaboration products" and therefore such costs could not have been

---

    [7]  Although Adidas notes that LPD has changed the precise amount of damages it seeks in
connection with the latter promise, Adidas does not appear to seek to exclude the evidence that
LPD will offer in support of those damages.  Accordingly, the Court only addresses Adidas'
argument that evidence of damages resulting from the former promise should be limited.  (*See*
Adidas Mem. 3–7 (arguing, *inter alia*, that none of the damages LPD seeks in connection with
the Promise "constitutes reliance damages, and LPD should be precluded from offering evidence
or argument concerning them at trial").)

incurred in reliance on the Promise.  (Adidas Mem. 4.)  LPD argues that the Promise

"necessarily included a . . . promise that LPD could advertise for sale, sell, . . . manufacture, and

deliver any" products that were part of the alleged collaboration.  (LPD Opp'n 8.)

The question of whether LPD reasonably relied on the Promise in incurring these

expenses is a question of fact for the jury to resolve.  *See Roberts v. Karimi*, 204 F. Supp. 2d 523,

528 (E.D.N.Y. 2002) ("The issue of whether the plaintiff's actions were in reasonable reliance

upon the [alleged agreement] is for a jury to decide, not this [c]ourt."); *see also NRP Holdings

LLC v. City of Buffalo*, No. 11-CV-472S, 2015 WL 9463199, at *5 (W.D.N.Y. Dec. 28, 2015),

*aff'd*, 916 F.3d 177 (2d Cir. 2019) (noting that "the question of whether a plaintiff reasonably

relied on an alleged promise is generally a fact intensive inquiry" (quoting *Levantino v.

Starwood Mortg. Cap. LLC*, No. 15-CV-5349, 2015 WL 7430860, at *4 (S.D.N.Y. Nov. 20,

2015))); *cf. Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428,

458 (S.D.N.Y. 2003) ("Courts applying New York law generally have found that the question of

a plaintiff['s] reasonable reliance raises issues of fact that should not be resolved on a motion to

dismiss." (quoting *ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P.*, 957 F. Supp. 1308, 1324

(S.D.N.Y. 1997))).  Accordingly, the Court declines to exclude evidence pertaining to the costs

that LPD incurred in reliance on the Promise on this basis.

The parties also dispute whether LPD must first establish that its efforts were not

"wasted" or "rendered useless" in order to recover reliance damages or whether Adidas must

instead demonstrate that LPD's losses should be "offset" by any loss that Adidas can prove LPD

would have suffered had it fully performed under the Promise.  (*See* Adidas Mem. 5–6; LPD

Opp'n 10.)  These requirements are not mutually exclusive.  To the extent LPD establishes that

the above-described costs were incurred in reasonable reliance on the Promise, it must also

demonstrate that its efforts were wasted or rendered useless even though it continued selling merchandise after the date of Adidas' alleged breach.  *See ADYB*, 2024 WL 2125431, at *14 (explaining that "the non-breaching party can recover [reliance] expenditures to the extent they are wasted if performance is abandoned" and the question of "waste" turns on "whether the claimant has carried its burden to prove the fact of damage with reasonable certainty" (internal quotation marks and citations omitted)).

If LPD can make such a showing, it is entitled to such costs as reliance damages. However, Adidas may further offset those damages by demonstrating that LPD would have incurred certain losses even if both parties had fully performed under the terms of the Promise. *See Bausch*, 977 F.2d at 729 (noting that "reliance recovery will be offset by the amount of any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been fully performed" (citations omitted)).  This outcome is consistent with the principle that reliance damages are not intended to "bestow a 'windfall' on injured parties." *Paragon Digit.*, 2022 WL 4383999, at *9.  To the extent LPD recouped its expenses through sales of merchandise or would have incurred certain expenses, permitting it to recover those expenses as reliance damages would constitute an impermissible windfall.

Accordingly, the Court will admit evidence concerning LPD's marketing and advertising expenses, cost of goods, and labor costs.  The Court therefore denies Adidas' motion insofar as it seeks to exclude such evidence.

### c.   Evidence concerning LPD's lost business value damages

Adidas argues that LPD should be precluded from seeking lost business value damages at trial because it has not pleaded the existence of special damages.  (Adidas Mem. 8–10.)  In support, Adidas contends that, "[t]o satisfy the special damages requirement," LPD was required

to "set forth an itemized account of [its] losses." (*Id.* at 8 (first alteration in original) (quoting *Nunez v. A-T Fin. Info. Inc.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997)).) Adidas argues that because LPD's allegations consist of only a general dollar amount, it has failed to sufficiently plead special damages and is therefore barred from seeking them at trial. (*Id.* at 9–10; *see also* Adidas Reply 6.)

LPD does not contend that it has sufficiently alleged special damages, but argues that because the Court held that Anderson's Statement is defamatory per se, it "was never required to [plead]" special damages. (LPD Opp'n 12–14.)

Under New York law, a defamation plaintiff may recover two types of compensatory damages: general damages and special damages. *See Robertson v. Doe*, No. 05-CV-7046, 2010 WL 11527317, at *2 (S.D.N.Y. May 11, 2010), *aff'd sub nom. Robertson v. Dowbenko*, 443 F. App'x 659 (2d Cir. 2011); *see also Glob. Auto, Inc. v. Hitrinov*, No. 13-CV-2479, 2021 WL 7367078, at *9 (E.D.N.Y. Aug. 20, 2021) ("There are two classes of compensatory damages for defamation: (1) general damages; and (2) special damages." (quoting *Wachs v. Winter*, 569 F. Supp. 1438, 1446 (E.D.N.Y. 1983))), *report and recommendation adopted*, 2022 WL 593613 (E.D.N.Y. Feb. 28, 2022). Courts have defined general damages to include "damage to reputation aris[ing] from the statement itself." *Robertson*, 2010 WL 11527317, at *2; *see also Wolf St. Supermarkets, Inc. v. McPartland*, 487 N.Y.S.2d 442, 448–49 (App. Div. 1985) (explaining that "the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering"). Special damages, on the other hand, "consist of the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation." *Celle v. Filipino Rep. Enters.*, 209 F.3d 163, 179 (2d Cir.

2000) (citations omitted); *see also Valada v. Cucciniello*, No. 22-CV-703, 2023 WL 2895225, at

*3–4 (N.D.N.Y. Apr. 10, 2023) (same); *Chamilia, LLC v. Pandora Jewelry*, LLC, No. 04-CV-

6017, 2007 WL 2781246, at *15 (S.D.N.Y. Sept. 24, 2007) ("Under New York law, 'special

damages' are defined 'as the loss of something having economic or pecuniary value such as loss

of profits,' as opposed to other types of harm to reputation or community standing." (citation

omitted)).  In order to successfully plead special damages, a plaintiff must do more than plead

"damages as a round number with no attempt at itemization."  *Bilinski v. Keith Haring Found.,

Inc.*, 96 F. Supp. 3d 35, 51 (S.D.N.Y. Mar. 6, 2015) (citing *Drug Res. Corp. v. Curtis Pub. Co.*,

7 N.Y.2d 435, 441–42 (1960)), *aff'd in part*, 632 F. App'x 637 (2d Cir. 2015); *see also El Meson

Espanol v. NYM Corp.*, 521 F.2d 737, 740 n.2 (1975).  "Special damages 'must be fully and

accurately stated, with sufficient particularity to identify actual losses.'" *Glob. Auto*, 2021 WL

7367078, at *9 (citation omitted).

     "New York law has long recognized that '[w]hen statements fall within' established

categories of *per se* defamation, 'the law presumes that damages will result, and they need not be

alleged or proven.'"  *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011) (footnote omitted)

(quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992)); *see also Palin v. N.Y. Times Co.*,

113 F.4th 245, 268 (2d Cir. 2024) (finding that the plaintiff "was not . . . obliged to prove special

damages because the challenged statements were defamatory *per se*"); *Paravas v. Tran*, No. 21-

CV-807, 2022 WL 718842, at *7 (S.D.N.Y. Feb. 22, 2022) ("Defamation *per se* . . . includes

statements impugning the plaintiff's business reputation and special damages need not be pled."),

*report and recommendation adopted*, 2022 WL 718587 (S.D.N.Y. Mar. 10, 2022); *Yesner v.

Spinner*, 765 F. Supp. 48, 52 (E.D.N.Y. 1991) ("It has long been the law in New York that a

defamatory statement that is a direct attack upon the business, trade or profession of the plaintiff

is considered defamation 'per se', and therefore actionable without any proof of special

damages."); *see also Celle*, 209 F.3d at 179 ("If a statement is defamatory per se, injury is

assumed.").

This presumption of damages applies only to general damages. *See, e.g.*, *Boule v.

Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) ("Where a statement impugns 'the basic integrity' of a

business, an action for defamation *per se* lies, and general damages are presumed." (citations

omitted)); *Shah v. Levy*, No. 13-CV-2975, 2016 WL 6459805, at *5 (S.D.N.Y. Oct. 31, 2016)

("Presumed damages . . . include [ ] impairment of reputation and standing in the community,

personal humiliation and mental anguish and suffering." (alterations in original) (quoting *Van-

Go Transp. Co. v. N.Y.C. Bd. of Educ.*, 971 F. Supp. 90, 100 (E.D.N.Y. 1997))); *cf. Gallo v.

Montauk Video, Inc.*, 684 N.Y.S.2d 817, 818 (App. Term 1998) (explaining that, in cases of libel

per se, "no special damages need be shown, since a presumption of actual damages to reputation

arises from the statement itself entitling plaintiff to recover general damages").  Thus, while

plaintiffs in defamation per se cases need not allege special damages in order to state a claim,

courts have held that they must allege and prove special damages in order to ultimately recover

those damages.  *See Glob. Auto, Inc.*, 2021 WL 7367078, at *9–10; *Fischer v. OBG Cameron

Banfill LLP*, No. 08-CV-7707, 2010 WL 3733882, at *2 (S.D.N.Y. Sept. 24, 2010) ("The

presumption of general damages in libel *per se* cases does not mean that the court can award

substantial damages without plaintiff having adduced any evidence; it merely means that special

damages need not be pleaded for the *per se* claim to be actionable." (citations omitted)); *Segel v.

Barnett*, 226 N.Y.S.2d 141, 143 (Sup. Ct. 1962) ("Where a statement uttered is slanderous per se,

the law presumes general damages to have been sustained, and it is not necessary, in order to

justify a recovery on that ground, that the damages should have been specifically pleaded or

proved.  But when it is sought to recover special damages the same must not only be pleaded but proved." (citation omitted)); *cf. Steward v. World-Wide Autos. Corp.*, 189 N.Y.S.2d 540, 547 (Sup. Ct. 1959) (explaining that the New York Court of Appeals has held that "whenever special damage is claimed, the plaintiff must state it with particularity, in order that the defendant may be enabled to meet the charge" (citation omitted)).

LPD has not sufficiently pleaded special damages and therefore may not pursue those damages at trial.  LPD's argument that it "was never required to [plead] . . . special damages," (LPD Opp'n 14), conflates what is required to state a claim for defamation per se with what is required to ultimately recover special damages.  As the Second Circuit has explained, "when it comes to pleading special damages, there is a distinction between cases in which special damage is essential to the cause of action and cases in which a cause of action exists irrespective of special damage." *Stevenson v. Hearst Consol Pubs.*, 214 F.2d 902, 906 (2d Cir. 1954).  As LPD argues, statements that are defamatory per se fall into the latter category because they "are actionable without pleading and proof of special damages." *Celle*, 209 F.3d at 179 (citation omitted).  Under these circumstances, "the law presumes general damages to have been sustained." *Segel*, 226 N.Y.S.2d at 143.

As set forth above, however, the law does not presume that special damages exist.  *See Glob. Auto*, 2021 WL 7367078, at *9 ("Special damages . . . are not presumed . . . ."); *Fischer*, 2010 WL 3733882, at *2 (explaining that "[t]he presumption of general damages in libel *per se* cases . . . merely means that special damages need not be pleaded for the *per se* claim to be actionable" (citations omitted)).  Thus, while LPD was not required to plead special damages in order to state a claim for defamation per se, it was required to plead special damages to recover

such damages.[8]  *See Glob. Auto*, 2021 WL 7367078, at *9–10 (explaining that even in

defamation per se cases, "[s]pecial damages must be fully and accurately stated, with sufficient

particularity to identify actual losses" and finding that the plaintiffs were "only entitled to

recover general damages, which [were] presumed as part of their successful libel per se claim").

LPD's pleadings allege only that Anderson's Statement "negatively reflect[s] on LPD's

professional reputation and character" and that, "[a]s a consequence of [Adidas'] publication of

false statement[s] . . . , LPD suffered and continues to suffer injury, the extent of which will have

to be determined at trial."  (SAC ¶¶ 129, 131; Am. Answer ¶ 54.)  Plaintiff's pleadings do not

"identify any actual losses with particularity," and therefore Plaintiff fails to sufficiently allege

special damages.  *Glob. Auto*, 2021 WL 7367078, at *10.  LPD also provided Adidas with a

"revision of [its] Rule 26 calculation of its damages" to clarify that it seeks "damages totaling no

less than $4 million for its defamation claim because [Adidas'] defamation destroyed LPD's

business . . . that was objectively valued at, at least, $4 million before its involvement with

[Adidas]."  (*See* LPD Suppl. Rule 26 Disclosures 1–2, annexed to Flemming Decl. as Ex. 1,

Docket Entry No. 267-1.)  These approximations are insufficient because special damages "must

be fully and accurately stated," *Glob. Auto*, 2021 WL 7367078, at *9, and "round figures, with

no attempt at itemization, must be deemed to be a representation of general damages."  *Drug

Res. Corp.*, 7 N.Y.2d at 441 (citation omitted); *see also Bilinski*, 96 F. Supp. 3d at 51 (same).

---

[8]  As Adidas argues, and LPD does not dispute, lost business value damages are special
damages.  (Adidas Mem. 8; *see* LPD Opp'n 12–14.)  *See Scholes v. Am. Kennel Club, Inc.*, No.
98-CV-6538, 1999 WL 799532, at *10 (S.D.N.Y. Oct. 7, 1999) (noting that the plaintiff alleged
"special damages" including "$1,500,000, representing the going-concern value of plaintiff's
business, including good will, had that business not been destroyed").

Accordingly, the Court grants Adidas' motion to exclude evidence pertaining to LPD's lost business value damages.[9]

### d.   LPD's deposition designations

#### i.   Deposition designations for Jarrett Mann, Kaori Cipriano, Linda Fainlight, and Sara Vanderhoff

Adidas argues that the Court should exclude "designations of the deposition transcripts of Jarrett Mann, Kaori Cipriano, Linda Fainlight, and Sara Vanderhoff" because "LPD improperly designated the entireties of the latter three transcripts and the vast majority of the former." (Adidas Mem. 16 (emphasis omitted).)  In support, Adidas contends that LPD's "indiscriminate submission of whole deposition transcripts is overbroad, improper, and imposes an undue burden on [A]didas and this Court." (*Id.* (citations omitted).)  Adidas also asserts that, although LPD has since provided "page-and-line designations for the Mann transcript," its "unwarranted delay" and failure to do so for the Cipriano, Linda Fainlight, and Vanderhoff transcripts have "severely prejudiced" Adidas and denied Adidas "its right to interpose objections or make counter-designations." (*Id.* at 18 (citation omitted); *see also* Adidas Reply 8–9.)

LPD argues that it designated the entirety of the Mann, Cipriano, and Linda Fainlight transcripts "in an abundance of caution considering its expectation that Mann, Cipriano, and Fainlight would appear at trial given their prior agreements, relationship to the parties, and location." (LPD Opp'n 15.)  LPD also argues that it designated the entirety of the Vanderhoff

---

[9]  Because the Court excludes evidence of special damages based on LPD's failure to plead special damages, it does not address Adidas' alternative arguments that such evidence should be excluded because (1) certain testimony is precluded by Rule 701 of the Federal Rules of Evidence, and (2) certain testimony is precluded by Rules 401 through 403 because "LPD cannot show that [Adidas'] alleged defamation caused the destruction of the entire business." (Adidas Mem. 10–14 (emphasis omitted).)  The Court also does not address Adidas' argument that, if LPD is allowed to pursue special damages, it should be precluded "from asserting any computation other than the $4 million figure discussed in [its] Rule 26 disclosures." (*Id.* at 15–16.)

transcript because it intends to cross-examine her if Adidas calls her as a witness, and LPD

presently "has no idea on what subjects Vanderhoff will ultimately testify." (*Id.* at 16.)

Although Adidas cites authority providing that "the better practice" is for courts to

"require counsel to specify the particular portions [of a deposition transcript] that are deemed

relevant and to limit the offer accordingly," it does not cite any authority holding that deposition

testimony should be excluded altogether where the designating party does not specify the

relevant excerpts. (*See* Adidas Mem. 16–17 (quoting *Pursche v. Atlas Scraper & Eng'g Co.*, 300

F.2d 467, 488 (9th Cir. 1961)).) Indeed, Rule 32 of the Federal Rules of Civil Procedure

expressly contemplates that "all or part of a deposition" may be used at trial provided certain

conditions are met. Fed. R. Civ. P. 32. Accordingly, the Court declines to exclude the

deposition testimony on the grounds that LPD designated the entirety of the deposition

transcripts.

However, courts have found that wholesale designations of deposition transcripts are not

appropriate and have directed parties to provide narrower designations when necessary. *See*

*Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, No. 02-CV-

5221, 2012 WL 638731, at *5 (N.D. Ill. Feb. 23, 2012), *aff'd*, 733 F.3d 722 (7th Cir. 2013)

(finding that the court did not commit error at trial when it excluded deposition testimony due to

the offering party's failure to make page-and-line designations); *Darville v. Am. Coach Lines of*

*Miami, Inc.*, No. 06-CV-20758, 2007 WL 174150, at *3 (S.D. Fla. Jan. 19, 2007) (directing the

parties to "prepare and jointly file one transcript for each deposition to be used during trial" and

directing the parties to edit each transcript to "remove all irrelevant, extraneous and unnecessary

pages"). Moreover, the Court's Individual Rules require that the parties include in their

proposed pretrial order "designation . . . of deposition testimony *to be offered in [each party's]*

*case-in-chief.*"  Individual Prac. & R. § 4.A.vii (emphasis added).  The Court therefore directs
LPD to provide page-and-line designations identifying the relevant portions of testimony that
LPD intends to "offer[] in its case in chief."  *Id.*

> ### ii.  Deposition designations for John Akers, Chris Grancio, and Whitney Grant

Adidas argues that LPD's "designations for the depositions of John Akers, Chris Grancio,
and Whitney Grant pertain to [their] employment history and responsibilities," Adidas' "internal
corporate structure," and Adidas' "internal investigations into Jarrett Mann's interactions with
LPD," and therefore are not relevant to "the limited issues remaining to be tried."  (Adidas Mem.
19.)  In support, Adidas asserts that the Court has "already disposed of the issues of Jarrett
Mann's actual authority and ratification," and none of the testimony from these witnesses will
bear on the issue of Mann's apparent authority, LPD's defamation claims, or damages.[10]  (*Id.* at
19–20 (emphasis and citation omitted).)

LPD argues that it "should be free to rely on the deposition testimony of any of [these]
witnesses to support its claim that Mann had apparent authority to act in the manner he acted."
(LPD Opp'n 16.)  LPD contends that, because the issue of Mann's apparent authority is "one that
the jury will have to resolve, it would be improper to preclude LPD from relying on those
deposition excerpts, . . . should they ultimately prove relevant at trial."  (*Id.* (citation omitted).)

Neither party provides excerpts of the deposition transcripts that LPD seeks to introduce
at trial.  As a result, it is unclear what evidence LPD seeks to admit and whether that evidence is

---

[10]  Adidas also argues that the testimony of Jackiewicz is not relevant to LPD's remaining claims because the defamation claims based on his statements are "not before the Court." (Adidas Mem. 20 (citation omitted).)  However, for the reasons stated in the Court's August 22, 2024 decision, the Court allows LPD's defamation claims arising out of Jackiewicz's statements to proceed to trial (the "Aug. 2024 Decision").  (Aug. 2024 Decision 9–10.)  As a result, Jackiewicz's testimony is relevant to LPD's remaining claims.

admissible under Rules 401 and 403, which allow admission of relevant evidence unless "its probative value is substantially outweighed by a danger of," *inter alia*, "unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403; *see also United States v. Bankman-Fried*, No. 22-CR-673, 2024 WL 477043, at *2–3 (S.D.N.Y. Feb. 7, 2024) (taking this approach); *SEC v. Lek Sec. Corp.*, No. 17-CV-1789, 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019) (same).  "Applying Rule 403 to determine if evidence is prejudicial . . . requires a fact-intensive, context-specific inquiry."  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008); *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 151 (2d Cir. 2010) ("[D]istrict courts must engage in a 'fact-intensive, context-specific inquiry' to determine whether to exclude . . . evidence under Rule 403." (quoting *Sprint*, 552 U.S. at 388)).

Because the Court lacks details regarding the specific testimony that LPD seeks to introduce concerning Mann's apparent authority, the Court cannot rule on the admissibility of such testimony given the "fact-intensive" and "context-specific" inquiry required.[11]  The Court therefore defers ruling on the admission of such evidence until presented with specific details as to what testimony LPD seeks to introduce.

## II.   LPD's motion *in limine*

LPD moves to exclude statements made by Adidas' counsel during the parties' pre-litigation settlement discussions in which counsel "threatened to sue [LPD]."  (LPD Mem. 2.)  LPD argues that, although these statements were "recorded . . . in LPD's initial pleading" in this

---

[11]  The Court previously determined that the "evidence indicate[d] a genuine dispute of material fact as to whether from a third party's perspective, [Adidas'] conduct reasonably gave the appearance that Mann was authorized to act on their behalf."  (Sept. 2022 Decision 22.)  The Court's ruling was based, *inter alia*, on evidence that another Adidas employee "indicated that Mann was in charge of the work," that "Mann communicated to [LPD] that he had successfully presented the project to his superiors and that the Collaboration was a 'full go,'" and that LPD "received [Adidas'] budget code from Mann to cover sampling costs."  (*Id.* at 23.)

case "to establish the existence of [a] . . . controversy between LPD and [A]didas," these statements constitute "[e]vidence of . . . statements made in compromise negotiations" that are inadmissible under Rule 408.  (*Id.* (quoting Fed. R. Evid. 408); *see also* LPD Reply 2.)  LPD also asserts that the statements are not admissible to establish notice or willfulness.  (LPD Reply 4, 8.)  In support, LPD argues that (1) a "threat of a countersuit . . . could not have established any 'notice' to [LPD] . . . that their conduct was, in fact, wrongful," (LPD Reply 5); (2) the statements are not evidence of "a separate, independent claim not addressed . . . during the . . . settlement conference" and are therefore barred by Rule 408, (*id.* at 6–7); and (3) the jury's determination of notice and willfulness should be based solely on testimony from Paul Loving and Fainlight rather than on statements made during pre-litigation settlement negotiations, (*id.* at 8–9; *see also* LPD Mem. 2–3).

Adidas argues that Rule 408 "does not require exclusion of evidence from settlement negotiations if that evidence is offered to establish notice" or "to establish willfulness."  (Adidas Opp'n 1.)  In support, Adidas argues first that Rule 408 "only prohibits the use of evidence from settlement discussions 'to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement'" and "does not apply to litigation threats" or evidence introduced to establish notice.  (*Id.* at 1–2.)  Second, Adidas contends that it "may be entitled to statutory damages, which may be enhanced upon a showing of willfulness," meaning that Adidas is "entitled to introduce evidence of every instance in which LPD was put on notice of its infringing behavior but refused to stop selling infringing goods."  (*Id.* at 3–4 (citation omitted).).

Rule 408 of the Federal Rules of Evidence "prohibits evidence of settlement discussions offered 'either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction.'"  *Lamberty v. Conn. State Police Union*, No. 21-

CV-1275, 2022 WL 319841, at *3 n.5 (2d Cir. Feb. 3, 2022) (quoting Fed. R. Evid. 408(a)).

However, "[e]vidence pertaining to settlement negotiations may be used when 'offered for a

purpose other than to prove the validity, invalidity, or amount of a disputed claim.'" *Clerveaux*

*v. E. Ramapo Cent. Sch. Dist.*, 984 F.3d 213, 243 (2d Cir. 2021) (citation omitted); *360Heros,*

*Inc. v. Mainstreet Am. Assurance Co.*, 816 F. App'x 555, 557 (2d Cir. 2020) ("Although Rule

408 . . . prohibits parties from offering evidence of settlement negotiations to prove or disprove

the validity or amount of a claim, such evidence is admissible if offered for some other reason."

(first quoting Fed. R. Evid. 408(b); and then citing *Starter Corp. v. Converse, Inc.*, 170 F.3d 286,

293 (2d Cir. 1999))).  This exception to Rule 408 is intended "'to exempt from the absolute

prohibition of the Rule evidence focused on issues different from the elements of the primary

claim in dispute' in the settlement negotiations." *United States v. Wahl*, 563 F. App'x 45, 51 (2d

Cir. 2014) (quoting *PRL USA Holdings, Inc. v. U.S. Polo Ass'n Inc.*, 520 F.3d 109, 114 (2d Cir.

2008)).  District courts are afforded "broad discretion in determining whether a statement is

admissible for 'another purpose' under Rule 408(b)." *Id.* (citing *Starter*, 170 F.3d at 293).  In

applying the exception to Rule 408, district courts "should weigh the need for such evidence

against the potentiality of discouraging future settlement negotiations." *Starter*, 170 F.3d at 293

(citation omitted).

The commentary to the 2006 amendments to Rule 408 expressly state that "Rule 408 is

inapplicable when evidence of the compromise is offered to prove notice."  Fed. R. Evid. 408

commentary to 2006 amendments.  Accordingly, courts have consistently found that statements

made during settlement negotiations are admissible to establish a party's notice of allegedly

wrongful conduct.  *See Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1055 (9th Cir. 2015)

(explaining that consent decrees "can be introduced . . . to show notice or knowledge" (citations

omitted)); *United States v. Austin*, 54 F.3d 394, 400 (7th Cir. 1995) (finding that evidence was not barred by Rule 408 where it "showed that [the defendant] was on notice when he subsequently sold other prints that those prints were forgeries"); *Power Integrations, Inc. v. ON Semiconductor Corp.*, 396 F. Supp. 3d 851, 860 (N.D. Cal. 2019) ("The case law confirms that Rule 408 does not bar the introduction of [settlement communications] for notice purposes." (citations omitted)); *Bright Harvest Sweet Potato Co. v. H.J. Heinz Co., L.P.*, No. 13-CV-296, 2015 WL 1138358, at *3 (D. Idaho Mar. 12, 2015) ("Evidence offered to prove notice falls outside the scope of Rule 408 and is deemed admissible (at least insofar as Rule 408 does not bar admission)." (citations omitted)); *cf. Wahl*, 563 F. App'x at 51 (noting that the Second Circuit has "affirmed the use of [evidence subject to Rule 408] to prove a defendant's knowledge in other contexts" (citing *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981))).

Similarly, in the context of actions involving claims of trademark or patent infringement, courts have found statements made during settlement negotiations to be admissible when offered to prove or disprove willfulness.  *Microban Prod. Co. v. API Indus., Inc.*, No. 14-CV-41, 2014 WL 1856471, at *3 n.10 (S.D.N.Y. May 8, 2014) (finding that an "offer in compromise" was not barred by Rule 408 because the party seeking to introduce it used it "as evidence of . . . willful infringement; and it is clearly admissible for that purpose"); *see also Carpenter Tech. Corp. v. Allegheny Techs., Inc.*, No. 08-CV-2907, 2012 WL 5507447, at *1 (E.D. Pa. Nov. 14, 2012) ("To the extent [plaintiff] seeks to introduce evidence of the parties' negotiations for the limited purpose of defending against willfulness, Rule 408(b) does not preclude it from doing so and neither will I."); *Itron, Inc. v. Benghiat*, No. 99-CV-501, 2003 WL 22037710, at *10 (D. Minn. Aug. 29, 2003) (reaffirming the court's ruling at trial that certain statements were "admissible to prove [the defendant's] claim of willful infringement").

Adidas seeks to introduce threats of litigation that its counsel made during pre-settlement litigation negotiations, (*See* LPD Mem. 2–3), to "show that LPD was on notice that it had no authority to use [Adidas'] trademarks" and that "LPD's behavior was willful," (Adidas Opp'n 1–2). These purposes are permissible under Rule 408. *See Samsung Elecs. Co., Ltd. v. Quanta Comput., Inc.*, No. 00-CV-4524, 2006 WL 2850028, at *5 (N.D. Cal. Oct. 4, 2006) (holding that Rule 408 would not bar admission of pre-litigation settlement negotiations introduced "to demonstrate [the defendant] had actual notice of the [patent at issue] and [the plaintiff]'s assertion of infringement"); *Microban*, 2014 WL 1856471, at *3 n.10 (finding that evidence of "an offer in compromise" being offered "as evidence of . . . willful infringement" in a trademark infringement action was "clearly admissible").

The Court is not persuaded by LPD's argument that, because it did not "recognize, concede, or affirm . . . that [its] conduct was in any[ way] wrongful," the statements could not have given notice to LPD that its "conduct was, in fact, wrongful." (LPD Mem. 5; *see also id.* at 8.) Regardless of LPD's position, the statements by Adidas' counsel may be admitted to prove that LPD had notice of Adidas' "assertion of infringement," *Samsung*, 2006 WL 2850028, at *5, or as evidence of "willful infringement," *Microban*, 2014 WL 1856471, at *3 n.10. LPD does not provide any authority to support its arguments that evidence of statements made during settlement negotiations are inadmissible when offered for these purposes.

Accordingly, the threats of litigation made during settlement negotiations are admissible for the limited purposes of (1) proving that LPD was on notice of Adidas' assertion of infringement, and (2) proving that LPD acted willfully when it continued its course of conduct after being put on notice of Adidas' position. The Court therefore denies LPD's motion.

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Adidas' motion *in limine* and denies LPD's motion *in limine*.

Dated: October 10, 2024
       Brooklyn, New York

SO ORDERED:


_____/s/MKB_____
MARGO K. BRODIE
United States District Judge